05-0394(L)
Shcherbakovskiy v. Da Capo Al Fine

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: October 27, 2005          Decided: June 11, 2007)

Docket Nos. 05-0394(L); 05-2391(XAP)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GRIGORY SHCHERBAKOVSKIY,

   Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,

          -   v.   -

DA CAPO AL FINE, LTD.,

   Defendant-Counter-Claimant-Appellee-Cross-Appellant,

HOWARD G. SEITZ,

   Defendant-Counter-Claimant-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, POOLER, and SOTOMAYOR, Circuit Judges.

    Appeal from a default judgment entered in the United States District Court for the Southern District of New York in favor of defendant-counterclaimant (Charles L. Brieant, Judge).  We vacate and remand.

                    ERIC R. LEVINE (Stephen L. Weinstein, on the
                    brief), Eiseman, Levine, Lehrhaupt &
                    Kakoyiannis, New York, New York, for
                    Plaintiff-Appellant.

                    ROBERT M. CALLAGY (Aaron M. Zeisler, on the
                    brief), Satterlee Stephens Burke & Burke LLP,
                    New York, New York, for Defendant-Appellee.

WINTER, Circuit Judge:

Grigory Shcherbakovskiy appeals from Judge Brieant's issuance of a default judgment dismissing appellant's complaint and granting appellees' counterclaims, on which a judgment for $1.4 million was entered. Appellant also asks that, if we reverse the default judgment, we rule on the denial of his motions to dismiss one counterclaim as legally insufficient. Defendants cross-appeal, challenging the amount of the damages awarded on the counterclaims.

We vacate the default judgment. We remand with instructions to assign the case to a different judge.

BACKGROUND

On October 30, 2001, Shcherbakovskiy entered into a Joint Venture Agreement with Da Capo Al Fine, Ltd. to restructure ZeTek Power, a British manufacturer of alkaline fuel cells. At the time, ZeTek Power was in the British equivalent of debtor-in-possession bankruptcy. Howard G. Seitz, a member of DC Al Fine's board of directors and its lawyer, negotiated the agreement with Shcherbakovskiy. Under the agreement, DC Al Fine and Shcherbakovskiy each contributed $250,000 to the joint venture. That $500,000 allowed ZeTek Power to continue its operations while in bankruptcy. However, by December 13, 2001, ZeTek Power had exhausted its financial resources.

DC Al Fine then formed a wholly-owned subsidiary called Da

2

Capo Fuel Cell Company. Seitz wrote to the administrator of ZeTek Power's estate in Great Britain and offered, on behalf of DC Fuel Cell, to buy ZeTek Power's assets for $550,000. Pursuant to an Asset Transfer Agreement, dated October 31, 2002, between DC Fuel Cell and ZeTek Power's joint administrators, DC Fuel Cell purchased ZeTek Power's assets. After DC Fuel Cell acquired ZeTek Power's assets, they were transferred to a new entity called Eident, formed by DC Fuel Cell with another company.

On February 24, 2003, Shcherbakovskiy filed suit against Seitz and DC Al Fine in the Southern District of New York. His complaint alleged that: (i) Seitz and DC Al Fine fraudulently induced him to enter the joint venture agreement funding ZeTek Power and (ii) Seitz and DC Al Fine, by acquiring ZeTek Power's assets for themselves, breached fiduciary duties owed him under the joint venture agreement. Seitz and DC Al Fine answered the complaint and asserted counterclaims for breach of contract, breach of fiduciary duty, and conversion.

The conversion counterclaim involved a Russian subsidiary of ZeTek Power, ZeTek Russia. ZeTek Russia's assets included a development agreement with Russia's Rocket Space Corporation, known as Energia. The counterclaim alleged that Shcherbakovskiy helped organize Independent Power Technologies ("IPT"), a Russian limited company. He now serves as chairman and is a minority shareholder of IPT. The conversion counterclaim alleged that IPT

3

wrongfully took control of ZeTek Russia's assets, including its employees, goodwill, and contract with Energia.

Shcherbakovskiy moved to dismiss the conversion counterclaim. The motion argued that ZeTek Russia was a not-for-profit organization and, under Russian law, could not have legally transferred its assets to DC Al Fine. Therefore, the argument went, because DC Al Fine had no claim of ownership of ZeTek Russia's assets, DC Al Fine could not assert a claim for conversion of them. The motion also sought to have Shcherbakovskiy's own complaint deemed to conform to the factual claim that ZeTek Russia was a not-for-profit organization or to give appellant an opportunity to amend the complaint.

The district court denied the motion to dismiss the conversion counterclaim in a two-paragraph order dated October 16, 2003. It read in full:

> The within pleading motion (Doc. No. 11)
> serves no useful purpose and is denied. The
> Counterclaims pleaded in the Answer are
> sufficient to satisfy Rule 8(a) F.R.Civ.P.
> It is not necessary at this time to determine
> choice of law with finality, however, the
> Court understands that the Counterclaims are
> based on breach of an agreement which is
> regulated by the laws of the United Kingdom
> or New York, not Russia.
>
> While this Court agrees that, were
> traditional common law pleading required, a
> partner or joint venturer cannot commit the
> tort of conversion of firm property, the
> pleading gives adequate notice of Defendant
> DeCapo's claim that Plaintiff got away with
> some or all of the property in Russia in

4

which DaCapo had some interest, in violation of the agreement of the parties, resulting in a triable fact issue.

At the heart of the present dispute is a discovery request by Seitz and DC Al Fine to Shcherbakovskiy for "documents relating to the technology which [IPT] is offering in America and other places throughout the world." Shcherbakovskiy, by way of affidavit and deposition testimony, stated that he had no access to the documents because he was only the non-executive chairman of IPT and, under Russian law and a confidentiality agreement with ZeTek Russia, could not overrule the decision of ZeTek Russia's board to deny access to the documents. Appellees argue that appellant's position was at odds with a letter he had written suggesting his absolute control of the company. Shcherbakovskiy has also produced a letter from Russian counsel suggesting that disclosure by him of some or all of the materials sought, which may involve sensitive technology, might cause Russian authorities to bring criminal proceedings against him, including one for treason.

At a December 2, 2003 conference, the district court took a dim view -- quoted at length below -- of Shcherbakovskiy's explanation and, in a December 12, 2003 order, ordered Shcherbakovskiy to produce the documents in question. The order warned that "[i]f plaintiff fails to produce documents responsive to [the order] on or before January 6, 2004, the court will

dismiss the Complaint, with prejudice and with costs, against the plaintiff and will grant the counterclaims of Da Capo." Shcherbakovskiy did not produce the documents, and on January 30, 2004, the court dismissed his complaint and granted default judgment to DC Al Fine and Seitz on their counterclaims.

Sometime in January 2004, Seitz realized that the conversion counterclaim properly belonged to DC Fuel Cell, a non-party. Seitz then prepared an assignment transferring the claim from DC Fuel Cell to DC Al Fine. That assignment, although drafted in January 2004, was dated effective as of April 3, 2003.

Shcherbakovskiy filed another motion to dismiss the conversion counterclaim, arguing that the assignment was a sham created merely to give DC Al Fine standing. The district court referred this motion, along with the question of damages on the counterclaim judgment, to Magistrate Judge Fox.

In his Report and Recommendation, the magistrate judge concluded that Seitz's assignment of the conversion counterclaim was valid, even though executed after the commencement of litigation. The district court adopted that report over Shcherbakovskiy's objection.

The magistrate judge issued a second report concluding that DC Al Fine was entitled to a jury trial on the issue of damages on the counterclaims. The district court adopted the conclusions of that report.

6

A three-day jury trial to determine damages on the conversion counterclaim ensued. The jury found that DC Al Fine was entitled to $500,000 in compensatory damages for Shcherbakovskiy's breach of contract and $1,400,000 for his conversion of ZeTek Russia's property. DC Al Fine was awarded only the larger of those two amounts -- $1,400,000 -- because the district court held that the damages for the breach of contract were included in the award for conversion and that combining the awards would therefore lead to a double recovery. Shcherbakovskiy has appealed from the entry of the default judgment and from the denial of his motions to dismiss the conversion counterclaim. DC Al Fine and Seitz cross-appeal from the damages award.

DISCUSSION

Shcherbakovskiy argues on appeal that: (i) the default judgment dismissing Shcherbakovskiy's complaint and granting Da Capo's counterclaims was an abuse of discretion; (ii) Shcherbakovskiy's motions to dismiss the conversion counterclaim should have been granted both because ZeTek Russia was a not-for-profit company powerless to transfer its assets and because DC Al Fine's claim to the assets in question was based on an invalid assignment from DC Fuel Cell; and (iii) we should reassign the case to a different judge on remand. DC Al Fine argues on the cross-appeal that the special verdict form misstated the law when

7

it characterized the breach of contract and conversion damages as duplicative.

a) <u>Default Judgment</u>

We review the imposition of sanctions for noncompliance with discovery orders for abuse of discretion. <u>Jones v. Niagara Frontier Transp. Auth.</u>, 836 F.2d 731, 734 (2d Cir. 1987). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).

Rule 37(b) provides that a court may impose sanctions "as are just" on a party for disobedience of a discovery order. Fed. R. Civ. P. 37(b)(2). We have noted that district courts possess "wide discretion" in imposing sanctions under Rule 37. <u>Daval Steel Prods. v. M/V Fakredine</u>, 951 F.2d 1357, 1365 (2d Cir. 1991). However, "[t]he sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to 'willfulness, bad faith, or any fault' of the deponent." <u>Salahuddin v. Harris</u>, 782 F.2d 1127, 1132 (2d Cir. 1986) (quoting <u>Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers</u>, 357 U.S. 197, 212 (1958)).

Neither the December 12, 2003 order nor the January 30, 2004 judgment contain factual findings or legal reasoning underlying

8

and explaining the default judgment.  These are contained entirely in a transcript of a hearing held on December 2, 2003.

During appellee's argument for the production of documents, the court repeatedly asked why the issue could not be left in the status quo, with appellant claiming a lack of access subject to impeachment based on his position in the company, size of investment, and inconsistent statements in a letter.  In the court's view, "no jury is going to believe he has no documents."

Appellant's counsel then stated his position in a colloquy that we set out in pertinent part:

> MR. WEINSTEIN:  Good morning.  First of all, I just want to briefly address some of the factual statements that [my adversary] made.
>
> THE COURT:  You're free to do that.  I assume that you're not agreeing with his factual statements.  But I have the problem of today. My problem today is why these documents don't have to be produced under some kind of protective order, if necessary, . . .  So I have to resolve these issues and get the case ready for trial.  I don't want you to misunderstand.  We have a felony trial ongoing here this morning and a violation of probation coming in.  We have other business besides somebody who doesn't want to produce documents.
>
> MR. WEINSTEIN:  I'll address that directly. Mr. Shcherbakovskiy is the nonexecutive chairman of ITP.  He stated under oath that he doesn't have any documents himself.
>
> THE COURT:  You don't believe that he has no control over the documents, do you?
>
> MR. WEINSTEIN:  Yes, I do.

9

THE COURT:  I think a jury is going to be very incredulous when they're confronted with that, and you buy the farm around here.  If you're going to take a bad position in discovery like that or allow your client to take it, you're not going to come in and blow hot and cold at the trial.  You're not going to take a different position with me, because if you are, your adversary is going to ask for a jury instruction.

MR. WEINSTEIN:  Our position, we've been informed under Russian law --

THE COURT:  Don't give me that.

MR. WEINSTEIN:  He has no control.

THE COURT:  You're a plaintiff here in Westchester County, New York.  You're under my discovery rules.  If you don't abide by my discovery rules, two things are going to happen.  Either you're going to lose your case on the merits with the jury because they're going to figure your client is lying, or you're going to get dismissed on the merits by the Court for failing to honor my directions.  I don't care about Russian law.  I believe that the average juror will think that he has constructive possession of these records and he can get to them if he really wants to.

MR. WEINSTEIN:  With all due respect, your Honor, this Court doesn't have power to order the company to turn over the documents.

THE COURT:  But I have power to dismiss your case with prejudice and costs.  I'll do that right now.

MR. WEINSTEIN:  These documents, first of all, are not for our case, they're for defense's --

THE COURT:  No, no.  Don't give me that.

MR. WEINSTEIN:  But it's true.

10

THE COURT: It's not true. You're going to produce them under a protective order or I'm going to toss your case and you'll explain to the Second Circuit. It's that simple truth with me. I don't have time to listen to a lot of drivel. This is ordinary discovery. Your client sought out this forum.

MR. WEINSTEIN: My client is suing individually. He's being counterclaimed individually. ITP is not a party to this. If they want these documents, they could have sued --

THE COURT: I'm going to order their production within 20 days. I'm going to have a precise enough order so I can make it stick. If you don't comply, I'm going to drop the case for the plaintiff, dismiss it with prejudice and costs and I'm going to take an inquest on the counterclaims and you can go your merry way. I don't have to listen to this kind of nonsense and I take a dim view of this fellow saying he can't, that he has no access to these records. He's what, the chairman of the board, is that what he is?

MR. WEINSTEIN: He's chairman of the board. He doesn't control the board. He's not the majority shareholder. He asked the board to produce the documents at a recent meeting following the letter I got from Mr. Callaghy --

THE COURT: I don't believe it. I'm telling you right now I don't believe it. Why don't the two of you confer and get a protective order and take 15 days to go get these records. . . And after that, if you don't comply with United States discovery, out you go. Do you want to do that?

MR. WEINSTEIN: I have no choice.

THE COURT: You have no choice except to call my bluff, which is not a bluff, and go to the Circuit, because you're not going to do this,

11

you're not going to access a federal forum in the United States and come in here and tell this court and tell a jury, oh, I'm suing individually. I'm only the chairman of the board and I can't produce any of these allegedly relevant documents, and then tell him also they don't exist. They'll laugh at you. You've done enough trial work to know that. These jurors will be smirking.

MR. WEINSTEIN: They won't be smirking because they can't even establish a prima facie case. They.

THE COURT: All I know is this --

MR. WEINSTEIN: He can't identify a single asset of ZeTek Moscow.

THE COURT: You're not going to split his identity. He's here and he's going out the window unless he complies with United States discovery. That's it. If you want to confer with each other and see if you can find a fair way to resolve this, do it. . .

MR. WEINSTEIN: I would need to consult with my client. But I believe that since he has no control over ITP --

THE COURT: I don't believe it. I told you that.

MR. WEINSTEIN: -- he may be unable to comply with the order.

THE COURT: And maybe the moon will fall onto the earth. Lots of things can happen in the future. I won't put up with this nonsense, I'm telling you right now. If you want to stick to your position, them I'm going to ask Mr. Callaghy to draft a proper order ordering precisely what's to be produced, setting a reasonable time to do it, giving you a return date to come in here and produce it here in court. I want him to add into that proposed order any protective provisions that you need to preserve your trade secrets or whatever.

12

And then if he doesn't do it, out you go and I'll hold an inquest on the counterclaims. If you want to gamble on whether the Circuit will uphold that, you can gamble. Your client can gamble. I don't care.

MR. WEINSTEIN: All right. I'll consult with Mr. Callaghy and with my client. I believe that we're going to have to go to the Second Circuit on this.

THE COURT: That's fine with me. I'm not going to allow anybody to come in here as a plaintiff and lie like that or take the position that I'm only here individually and I can't access these Russian records because I don't control the board, I'm only the chairman.

MR. WEINSTEIN: What is the purpose, what is the purpose of corporate structure and laws if --

THE COURT: It's not to be used as a method of fraud.

MR. WEINSTEIN: It's not a method of fraud.

THE COURT: You have your opinion and I have my opinion. I told you what to do. You're either going to do it or not. I don't care. Why don't you try to be sensible. Why don't you not lead your client down the primrose path because you think you're right and try to be sensible. . .

It's very wrong to test the Court's resolve to preserve the sovereignty of the United States and the integrity of our pretrial discovery. That's very wrong and it's going to get your client into a bad situation.

MR. WEINSTEIN: I'm unaware of any caselaw where a person has been sued individually and has been forced to produce documents from a foreign corporation.

THE COURT: One of us is wrong.

13

(Recess)

Turning to the legal issues first, a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain.[1] See Fed. R. Civ. P. 34(a) ("Any party may serve on any other party a request . . . to produce . . . documents . . . which are in the possession, custody or control of the party upon whom the request is served . . . ." (emphasis added)), E.E.O.C. v. Carrols Corp., 215 F.R.D. 46, 52 (N.D.N.Y. 2003); see also Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 204 (1958) (acknowledging that Rule 34 requires inquiry into whether party has control over documents), Fisher v. U.S. Fidelity & Guar. Co., 246 F.2d 344, 350 (7th Cir. 1957). We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents. However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required. In Re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 530 (S.D.N.Y. 1996).

In the present case, appellant denies both the legal and practical ability to obtain the documents from IPT. He claims that, although Chairman of the Board, his minority status as a shareholder and Russian law pose insurmountable barriers to his

14

obtaining the documents. The district court disposed of appellant's claim on two grounds. The court took the view that Russian law was irrelevant in discovery matters in United States courts. In the court's view, therefore, even if appellant's claim as to Russian law was true, sanctions would be justified. Nevertheless, it also made a credibility finding that appellant's factual claim was untrue, stating in strong terms that it did not believe the claim. On this record, these grounds cannot support the sanction imposed, even under an abuse of discretion standard.

Appellees are entitled to the production of the documents in question if appellant has access to them and can produce them. Appellees cannot as a practical matter compel IPT to produce them in this litigation, and they are of undoubted relevance to the counterclaims. However, contrary to the district court's view, Russian law is relevant to the issues and poses no threat to the sovereignty of the United States. See United States v. Funds Held in the name of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000) ("Questions relating to the internal affairs of corporations . . . are generally decided in accordance with the law of the place of incorporation."). If Russian law prohibits appellant from obtaining and producing the documents even with the agreement of IPT's board and an appropriate protective order in the district court, then the matter is at an end.

However, if Russian law prohibits production simply because

15

board approval -- or waiver of a confidentiality agreement as to production in the United States under a proper protection order -- is necessary, then the issue of appellant's control of IPT arises. If the district court finds that, contrary to appellant's present claim, IPT is his alter ego or his investment in it is sufficient to give him undisputed control of the board, such a finding could support an order to produce. See 7 Moore's Federal Practice § 34.14[2][c] ("[W]hen an action is against an officer individually, and not also against the corporation, production may be denied unless there is evidence that the officer is the 'alter ego' of the corporation" (citing Am. Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 502 (D.Kan. 2001)); see also A.F.L. Falck, S.P.A. v. E.A. Karay Co., Inc., 131 F.R.D. 46, 48-49 (S.D.N.Y. 1990) (holding that because the individual party controlled two non-party corporations, he also controlled production of their documents). On the present record, however, which includes appellant's affidavit that, although Board Chair, he is a minority shareholder and Russian law prevents his production of the documents, a finding of control cannot be sustained, at least without further explanation. A remand is therefore necessary to explore Russian law and, if necessary, appellant's control of IPT, an issue that may involve a finding as to his credibility. Both the inquiry into Russian law and appellant's control of IPT will inform a finding as to

16

appellant's willfulness, or lack thereof, in refusing to produce the documents. On remand, the district court should also consider Shcherbakovskiy's claim that to turn over the documents would subject him to criminal sanctions under Russian law, and evaluate both the factual basis and legal consequence of that claim in light of United States v. Davis, 767 F.2d 1025, 1033-34 (2d Cir. 1985) (describing the balancing test with which to evaluate the propriety of orders directing production of documents abroad where such production would violate the laws of the state where they are located).

Moreover, the district court did not consider the efficacy of lesser sanctions. See Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir. 1990) (per curiam) (finding no abuse of discretion when, among other things, "the district court explored numerous options before ordering dismissal"); see also Fed. R. Civ. P. Rule 37(b)(2) (enumerating lesser sanctions, including, for example, issuing an order deeming the disputed issues relevant to the unproduced documents determined adversely to the position of the disobedient party). So far as can be gleaned from the transcript, the court chose between the extremes of the status quo and dismissal of the complaint and granting of the counterclaims.

With no findings or explanation from the district court, we cannot conclude that the sanction of dismissal of the complaint

17

and granting of the counterclaims was appropriate. Rule 37 permits the imposition of "just" sanctions; the severity of the sanction must be commensurate with the non-compliance. The sanction of dismissal "'is a drastic remedy that should be imposed only in extreme circumstances,' usually after consideration of alternative, less drastic sanctions." John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (quoting Salahuddin, 782 F.2d at 1132); see also id. ("Dismissal under Rule 37 is warranted, however, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault."); Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979) (finding that dismissal is not appropriate "[w]here the party makes good faith efforts to comply, and is thwarted by circumstances beyond his control.").

Findings of bad faith and consideration of lesser sanctions are particularly necessary here in light of two factors. First, the district court repeatedly stated that the failure to produce the documents would inevitably alienate a jury, suggesting that appellees would not be prejudiced by the absence of the documents. Second, while the documents in question appear to relate only to appellees' conversion counterclaim, the district court dismissed appellant's complaint as well, again without findings or other explanation. We do note that appellant's

18

claims may be so related to the ownership of ZeTek Power, and, through it, ownership of ZeTek Russia that appellant should not be allowed to pursue them in the face of a valid default judgment for appellees on the counterclaims. Such a conclusion, however, can be reached only after further consideration by the district court.

We emphasize that there may be a plausible explanation that supports the dismissal and default judgment entered by the district court. But entering the default judgment without such an explanation was an abuse of discretion.

b) <u>Appellant's Motions to Dismiss</u>

Appellant argues that DC Al Fine's conversion counterclaim does not state a valid claim for two reasons. First, he claims that DC Al Fine has no ownership interest in ZeTek Russia sufficient to support a conversion claim because ZeTek Russia was organized as a non-commercial organization in Russia whose assets could not legally have been transferred to DC Al Fine upon its purchase of ZeTek, leaving DC Al Fine with no ownership interest in ZeTek Russia upon which to base a claim for conversion. Second, appellant maintains that DC Al Fine did not have standing to assert the conversion counterclaim when it was filed and the January 2004 assignment from DC Fuel Cell was ineffective because it violated New York's law against champerty. Appellant also argues that, even if the assignment was valid, it could not cure

19

the jurisdictional defect under Rule 17(a) in light of the prejudice he suffered. That prejudice, he argues, lies in the fact that he consented to New York jurisdiction only to the extent necessary to bring the suit against DC Al Fine.

Although it would undoubtedly be helpful to provide a final resolution of these issues, we decline to address the underlying legal issues definitively. Our vacating of the default judgment renders such a disposition unnecessary, and examination of the legal issues strongly suggests that such a disposition at this juncture would be imprudent.

In particular, there are many loose ends that are better dealt with on motions for summary judgment or after a trial. For example, whether ZeTek Russia is a not-for-profit company that cannot transfer assets is an issue that cannot be disposed of on either the face of the counterclaim or of appellant's complaint, which he seeks to amend. Indeed, the parties went beyond the face of the pleadings in arguing the issue in the district court.

Moreover, the district court's denial of the motion to dismiss the conversion counterclaim because of ZeTek Russia's status was not particularly responsive to the issue raised. It framed the question as involving a choice of law issue as to a breach of contract claim to which Russian law was in the court's view irrelevant. Whatever may be the case as to the breach of contract counterclaim, the conversion counterclaim does depend on

20

a claim of ownership to which Russian law may be relevant. With regard to the issues arising from the DC Fuel Cell/DC Al Fine assignment, whether appellant was prejudiced by that assignment because he consented to New York jurisdiction only to sue DC Al Fine was never addressed by the district court. And we see no reason in the circumstances described above to opine on appellant's champerty argument at this time.

Each of these issues is potentially dispositive of the conversion counterclaim, obviating the need to reach other issues; each requires some amplification of the record; and each may also become irrelevant if a valid dismissal as a sanction is entered.

c)  The Special Verdict Form

On cross-appeal, DC Al Fine challenges the special verdict form used at the damages trial. That form directed the jury to enter as its verdict only the larger of the award for breach of contract or for conversion. "The formulation of special verdict questions rests in the sound discretion of the trial judge, and should be reviewed by an appellate court only for an abuse of that discretion." Vichare v. AMBAC Inc., 106 F.3d 457, 465 (2d Cir. 1996). "In order to preserve for appeal any objection to the form or substance of such questions, a party must object before the jury has retired." Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988); see Fed. R. Civ. P.

21

49(a).

We believe it useful to address this issue.  The sanction of granting the counterclaims may be reentered and valid; if so, the validity of the damages verdict will be in issue.  Moreover, it may be -- and we do not decide this -- that, if liability on the counterclaims is established on the merits, a second damages trial may be unnecessary.  See Dazenko v. James Hunter Mach. Co., 393 F.2d 287, 291 (7th Cir. 1968).  We therefore proceed to the cross-appeal.

DC Al Fine has forfeited its challenge to the special verdict form by agreeing to it at trial.  Upon reviewing the special verdict form, DC Al Fine's counsel explicitly approved it in the clearest terms, stating that "the special verdict form as distributed is satisfactory to the plaintiff."  Counsel for DC Al Fine did not object to the form nor offer any indication that it was dissatisfied with it.[2]

When a party has failed to preserve an argument, we will entertain it only if the alleged error is "fundamental."  Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 312-13 (2d Cir. 2001). "An error is fundamental under this standard only if it is 'so serious and flagrant that it goes to the very integrity of the trial.'"  Id. at 313 (quoting Modave v. Long Island Jewish Med. Ctr., 501 F.2d 1065, 1072 (2d Cir. 1974)).  To meet this standard, a party must demonstrate even more than is necessary to

22

meet the plain error standard in a criminal trial.  See id.; Travelers Indem. Co. v. Scor Reinsurance Co., 62 F.3d 74, 79 (2d Cir. 1995) ("Fundamental error is narrower than the plain error doctrine applicable to criminal cases.").

There is no fundamental error here.  The two theories of liability advanced by DC Al Fine were conversion and breach of contract.  Under both theories, the injury to DC Al Fine arguably stems from the loss of an opportunity to participate in IPT, which DC Al Fine alleges is simply a company built around the assets of ZeTek Russia.  This is also the basis for the conversion claim -- the misappropriation of the assets of ZeTek Russia.

Of course, if a second trial on damages occurs, the parties are free to make whatever arguments are available to them.

e)  Reassignment to Another Judge

Shcherbakovskiy argues that the case should be reassigned to another judge on remand.  In considering whether to reassign a case on remand, we look to the following factors:  "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication

out of proportion to any gain in preserving the appearance of fairness." United States v. Robin, 553 F.2d 8, 10 (2d Cir. 1977) (denial of rehearing en banc).

There is little doubt that the district judge would follow our instructions as to the law on remand. However, the judge has rendered a visceral judgment on appellant's personal credibility, namely that his denial of control was "nonsense," "drivel," a "fraud," and a "lie." Whether any person can take an objective second look at testimonial evidence after reaching such a conclusion is questionable, but certainly the appearance of justice would be well-served by reassignment on remand. Cullen v. United States, 194 F.3d 401, 408 (2d Cir. 1999) (remanding for a new sentencing proceeding before a different judge because the sentencing judge had made a determination that the defendant was not credible and "'the appearance of justice is better satisfied by assigning the resentencing to a different judge.'" (citing United States v. Leung, 40 F.3d 577, 587 (2d Cir. 1994)). [A 148.17-.18] Given that the judgment below was entered after a default, reassignment poses no costs in judicial economy. Consequently, we direct that the case be reassigned to a different judge on remand.

                          CONCLUSION

We vacate the default judgment and remand the case, which shall be assigned to another judge.

24

FOOTNOTES

1. Of course, we agree with the district court that a party may not "blow hot or cold" and, having persuaded the court in discovery of its inability to produce such documents, later seek to use them to help its case at trial.  See Design Strategy, Inc. v. Davis, 469 F.3d 284, 295-98 (2d Cir. 2006).  Moreover, the circumstances at trial may justify the jury's learning of the party's non-production and drawing an adverse inference from it.  See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106-07 (2d Cir. 2002).

2. To overcome this forfeiture, DC Al Fine relies on a statement by the district court that "[y]ou'll be deemed to make every motion available to you under the rules."  However, this blanket statement does not meet DC Al Fine's burden of objecting to the special verdict form under Rule 51, which requires that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection."  Fed. R. Civ. P. 51(c)(1); see also Jarvis v. Ford Motor Co., 283 F.3d 33, 53, 56 (2d Cir. 2002).  DC Al Fine failed to meet that requirement.