**ROYAL PARK INVESTMENTS SA/NV, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**U.S. BANK NATIONAL ASSOCIATION, as Trustee, Defendant.**

**14 Civ. 2590 (VM) (JCF)**

United States District Court, S.D. New York.

Signed November 9, 2016

Cody R. Lejeune, Darryl J. Alvarado, Hillary B. Stakem, Joseph Marco Janoski Gray, Lucas F. Olts, Arthur C. Leahy, Ashley M Robinson, Jennifer Nunez Caringal, Juan Carlos Sanchez, Steven W. Pepich, Robbins Geller Rudman & Dowd LLP, San Diego, CA, Christopher M. Wood, Robbins Geller Rudman & Dowd LLP, San Francisco, CA, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, for Plaintiff.

Michael Stephan Kraut, Morgan, Lewis and Bockius LLP, New York, NY, Benjamin Patrick Smith, Rollin Bernard Chippey, Tera Marie Heintz, Morgan, Lewis & Bockius LLP, San Francisco, CA, Chelsea Walcker, Martin Richard Lueck, Michael Collyard, Peter Cooper Ihrig, Samuel Lewis Walling, Stacey Paige Slaughter, Thomas F. Berndt, David Leichtman, Sherli Furst, Robins, Kaplan, Miller & Ciresi L.L.P., New York, NY, Hillel Ira Parness, Parness Law Firm, PLLC, New York, NY, David E. Marder, Morgia Dampf Holmes, Robins, Kaplan, Miller & Ciresi L.L.P, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

### JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE

This case may well be doomed by the inability of the plaintiff to produce relevant documents. However, the time has not yet come for the axe to fall. The defendant, U.S. Bank National Association ("U.S. Bank"), has moved pursuant to Rule 37(b) of the Federal Rules of Civil Procedure to dismiss the action due to the failure of the plaintiff, Royal Park Investments SA/NV ("Royal Park"), to comply with a discovery order. In the alternative, U.S. Bank seeks an order disqualifying Royal Park as class representative in this putative class action. The motion is denied.

### Background

This case concerns residential mortgage backed securities ("RMBS") held in twenty-one RMBS trusts (the "Covered Trusts") for which U.S. Bank serves as trustee.[1] (Complaint, ¶ 2). Royal Park is a Belgian company that was formed following the 2008 financial crisis to acquire and manage certain distressed assets of Fortis Bank SA/NV ("Fortis Bank") when that Belgian financial institution was at risk of collapse. (Declaration of Danny Frans dated July 1, 2016 ("Frans Decl."), ¶¶ 5–7). The assets that Royal Park ultimately acquired include twenty-eight RMBS certificates in the Covered Trusts. (Frans Decl., ¶ 10).

When the Covered Trusts acquired the underlying mortgage loans, the originator of each loan or some intermediary entity such as the sponsor of the RMBS securitization (the "Transferors") made representations and warranties concerning the quality of the underlying loans. (Complaint, ¶ 7). Under the agreements governing the Covered Trusts, known as Pooling and Servicing Agreements ("PSAs") or Trust Agreements ("TAs") (collectively, the "Governing Agreements"), U.S. Bank, as trustee, was obligated to take steps to require the Transferors to cure, substitute, or repurchase any mortgage loan that materially breached any representations or warranties. (Complaint, ¶¶ 8–9). According to the Complaint, U.S. Bank failed to meet its responsibilities. Although it discovered as early as 2009 that the representations and warranties in thousands of the mortgage loans within the Covered Trusts had been breached, U.S. Bank did not enforce the Transferors' obligations to cure, substitute, or repurchase the defective mortgage loans. (Complaint, ¶ 10). As a consequence, potential claims that might have been asserted against the Transferors are now time-barred. (Complaint, ¶ 10).

Royal Park also alleges that U.S. Bank violated the Governing Agreements by failing to enforce the obligations of entities that were servicing the mortgage loans. The Governing Agreements designated Servicers or Master Servicers (collectively, "Servicers") for the mortgage loans within the Covered Trusts. (Complaint, ¶ 11). These Servicers were responsible for administering the loans consistent with customary loan servicing practices of prudent loan servicers, and an "Event of Default" occurred when they failed to do so. (Complaint, ¶ 11). Under the Governing Agreements, upon an Event of Default, U.S. Bank had responsibilities to request the Servicer to cure, to give notice of the Event of Default to certificate owners and others, and to replace the Servicer or take over its duties. (Complaint, ¶ 12). According to the Complaint, as early as October 2010, U.S. Bank learned of "widespread, on-

---

1. Claims with respect to four additional trusts have been dismissed in connection with a class action settlement in another case. (Stipulation and Order dated July 28, 2015 ("7/28/15 Order"), ¶ 3).

going, uncured Events of Default" by Servicers, including illegal foreclosure practices such as the filing of false affidavits. (Complaint, ¶ 14). Yet, U.S. Bank neither notified the certificate owners nor took steps to remedy the Events of Default; as a result, numerous foreclosures were invalidated, mortgage delinquencies were allowed to persist, and mortgage loans were foreclosed or modified on terms unfavorable to the certificate holders. (Complaint, ¶¶ 14–15).

Royal Park commenced this action on April 11, 2014, asserting three causes of action: violation of the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa et seq. (Complaint, ¶¶ 326–331), breach of contract for failure to comply with the terms of the Governing Agreements (Complaint, ¶¶ 332–339), and breach of trust (Complaint, ¶¶ 340–345).[2] On July 28, 2015, the Trust Indenture Act claims were dismissed without prejudice by stipulation. (7/28/15 Order, ¶ 1).

On March 15, 2016, U.S. Bank moved to compel Royal Park to produce documents (1) in the possession of Fortis Bank and the related entities (the "Assignors") from which Royal Park had obtained the certificates at issue, and (2) in the possession of successors to the Assignors.[3] (Letter Motion of Benjamin P. Smith dated March 15, 2016, at 2). Royal Park contested the motion, in part on the basis that it did not have possession, custody, or control of documents that remained in the possession of the Assignors or their successors. (Letter of Darryl J. Alvarado dated March 22, 2016, at 5). I granted the motion by text order dated March 30, 2016, relying on the reasoning of the Honorable

Barbara C. Moses, U.S.M.J., in Royal Park Investments SA/NV v. Deutsche Bank National Trust Co., 314 F.R.D. 341 (S.D.N.Y. 2016) ("Deutsche Bank I"). (Order dated March 30, 2016). Judge Moses held that "the assignee of a litigation claim" cannot "pursue that claim, free of the obligation to provide otherwise-discoverable documents, simply because those documents remain in the hands of its non-party assignor." Deutsche Bank I, 314 F.R.D. at 344. She relied on J.P. Morgan Chase Bank v. Winnick, 228 F.R.D. 505 (S.D.N.Y. 2005), where the court had rejected the same argument advanced by Royal Park concerning its lack of control over requested documents:

> Viewed from any angle, plaintiff's position cannot be correct. It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear.

Deutsche Bank I, 314 F.R.D. at 344 (quoting Winnick, 228 F.R.D. at 506).

Thereafter, Judge Moses permitted Royal Park to move for a protective order on the basis that, while it had attempted to obtain requested documents from the Assignors, those efforts had proven fruitless. (Letter of Darryl J. Alvarado dated April 18, 2016 ("Alvarado 4/18/16 Letter") at 1). Accordingly, Royal Park asked that I stay my March 30,

---

**2.** Royal Park subsequently filed similar actions in this district against four other financial institutions acting as trustees for RMBS trusts in which Royal Park has an ownership interest. See Royal Park Investments SA/NV v. Deutsche Bank National Trust Co., No. 14 Civ. 4397, 2014 WL 2764110 (S.D.N.Y. June 18, 2014); Royal Park Investments SA/NV v. Bank of New York Mellon, No. 14 Civ. 6502, 2014 WL 3965567 (S.D.N.Y. Aug. 14, 2014); Royal Park Investments SA/NV v. HSBC Bank USA, N.A., No. 14 Civ. 8175 (S.D.N.Y. Oct. 10, 2014); Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., No. 14 Civ. 9764, 2014 WL 6989191 (S.D.N.Y. Dec. 11, 2014).

**3.** The Assignors appear to include Fortis Bank SA/NV, Cayman Branch; Fortis Bank SA/NV;

Clifton I CDO Ltd.; Clifton I CDO LLC; Fortis Park Lane Ireland; Fortis Securities LLC; Pacific Pinnacle CDO Ltd.; and Nassau CDO I Ltd. (Exhibit 1 to Plaintiff Royal Park Investment SA/NV's Responses and Objections to Defendant U.S. Bank National Association's First Set of Interrogatories, attached as Exh. A to Declaration of Benjamin P. Smith dated May 27, 2016 ("Smith Decl.")). Royal Park denies that it received any of the certificates at issue from Fortis Bank SA/NV, Cayman Branch or Fortis Securities. (Plaintiff's Memorandum of Law in Opposition to Motion for Sanctions ("Pl. Memo.") at 4 n.3). This dispute is immaterial to resolution of the current motion.

2016 order until Judge Moses had ruled. (Alvarado 4/18/16 Letter at 2). I declined to do so, and indicated that if Royal Park did not comply with my order, U.S. Bank could move for an order of preclusion or other appropriate remedy. (Memorandum Endorsement dated April 19, 2016). Asserting that Royal Park has not complied, U.S. Bank filed the instant motion on May 27, 2016. Judge Moses subsequently decided Royal Park's motion for a protective order, granting it in part and denying it in part. Royal Park Investments SA/NV v. Deutsche Bank National Trust Co., No. 14 Civ. 4394, 2016 WL 4613390 (S.D.N.Y. Aug. 31, 2016) ("Deutsche Bank II").

Discussion

A. Legal Standard

Where "a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include: (1) directing that matters in the litigation be taken as established by the prevailing party; (2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (3) striking pleadings in whole or in part; (4) staying further proceedings until the order is obeyed; (5) entering judgment against the disobedient party; and (6) requiring the disobedient party or her attorney to pay the reasonable expenses caused by the failure. Fed. R. Civ. P. 37(b)(2)(A); see also Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302 (2d Cir. 2009) (noting that party's failure to comply with court-ordered discovery may result in terminating sanctions); Daval Steel Products, a Division of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991) ("When a party seeks to frustrate [discovery] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.").

██ Discovery sanctions serve a three-fold purpose: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general. Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979); see also Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010); Update Art, Inc. v. Modiin Publishing, Ltd., 843 F.2d 67, 71 (2d Cir. 1988); Aliki Foods, LLC v. Otter Valley Foods, Inc., 726 F.Supp.2d 159, 178 (D. Conn. 2010). Harsh sanctions such as dismissal or default are reserved for extreme situations. See Agiwal, 555 F.3d at 302; see also Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) (noting that "the severity of sanction must be commensurate with the non-compliance").

██ When determining the appropriate sanction to impose under Rule 37, courts in this Circuit weigh several factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (quoting Agiwal, 555 F.3d at 302). Prejudice to the moving party may also be a significant consideration, though not an absolute prerequisite in all circumstances. See Southern New England Telephone Co, 624 F.3d at 148–49; Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006); Local Union No. 40 of the International Association of Bridge, Structural and Ornamental Iron Workers v. Car–Win Construction Inc., 88 F.Supp.3d 250, 262–63 (S.D.N.Y. 2015). Indeed, no one factor alone is dispositive. World Wide Polymers, 694 F.3d at 159 (noting that "these factors are not exclusive, and they need not each be resolved against the [sanctioned] party" (quoting Southern New England Telephone Co., 624 F.3d at 144)).

B. Willfulness

██ Royal Park insists that any failure to comply with my discovery order was not willful, as it took all reasonable steps to obtain and produce the requested information. (Pl. Memo. at 9–14). Judge Moses did

not accept that argument in Deutsche Bank II, 2016 WL 4613390, at *7–9, and I reject it here.

When the collapse of Fortis Bank appeared imminent, the Belgian government engineered a deal for the sale of Fortis to BNP Paribas ("BNPP"). (Frans Decl., ¶5). On October 10, 2008, the government entered into a Protocole d'Accord, which set forth the terms of the sale of Fortis to BNPP. (Frans Decl., ¶5). Under that agreement and prior to any transfer of assets to BNPP, a portfolio of distressed assets that BNPP was not willing to acquire were "ring-fenced." (Frans Decl., ¶7). On May 12, 2009, pursuant to the Portfolio Transfer Agreement (the "PTA"), the ring-fenced assets, including the certificates at issue here, were transferred from Fortis to Royal Park for €11.7 billion. (Frans Decl., ¶¶6, 8, 10). Thereafter, Fortis was renamed BNP Paribas Fortis SA/NV ("BNPPF"). (Frans Decl., ¶8).

Danny Frans, who had previously been an executive with Fortis Bank, became Chief Executive Officer of Royal Park upon its creation. (Frans Decl., ¶¶2–4). Along with other former Fortis Bank employees, he went about collecting documents relevant to managing the portfolio that Royal Park had acquired. (Frans Decl., ¶¶19–20). Mr. Frans acknowledges that Royal Park did not collect certain categories of Fortis documents. (Frans Decl., ¶¶21–26). He further states that, "during the investigation process for potential litigation actions, Royal Park asked and received certain other related Fortis Securities documents." (Frans Decl., ¶20). He does not specify, however, what was asked for at that time and what was or was not provided.

We do know that in 2012 Royal Park requested documents from BNPPF in support of potential fraud litigations in the United States. (Frans Decl., ¶27). When BNPPF was not forthcoming, Royal Park filed a sub-poena and Writ of Summons in the Brussels Court of Commerce.[4] (Frans Decl., ¶29). This proceeding was partially resolved in February 2013, when Royal Park agreed to narrow the scope of its request and BNPPF agreed to produce the more limited universe of documents. (Frans Decl., ¶30). The Belgian court then issued a preliminary ruling embodying this agreement. (Frans Decl., ¶30; Interlocutory Judgment, attached as Exh. D to Frans Decl.). Thereafter, on April 26, 2013, the parties executed a Settlement Agreement (Frans Decl., Exh. E) resolving all outstanding issues: Royal Park agreed to dismiss the Brussels litigation (Settlement Agreement, art. 2.2); Royal Park released all claims relating to the securities transferred under the PTA (Settlement Agreement, art. 1); BNPPF agreed not to assert any claims as a class participant or otherwise in connection with the securities transferred to Royal Park (Settlement Agreement, art. 3.2); and BNPPF agreed to execute a letter "confirming" that when it transferred the portfolio to Royal Park in 2009, it "intended to and did transfer and assign to [Royal Park] all litigation rights, causes of action and claims" arising out of the transferred securities (Settlement Agreement art. 3.1 & Exh. A).

■ These facts do not undermine my original order that Royal Park produce documents held by the Assignors (including BNPPF), nor do they suggest that the failure to comply with that order was not willful. At the time that Royal Park took assignment of the assets at issue, it was in a position to bargain for rights collateral to the assets themselves, including the right of access to any documents that it might need in the future, for litigation purposes or otherwise. Apparently, Royal Park did not then press the issue. Having thus surrendered the ability to obtain documents now relevant to litigation that it has instigated, Royal Park cannot be heard to argue that a failure to produce

---

4. In its initial motion papers, U.S. Bank relied on a document from the Brussels litigation that it characterized as a decision of the Belgian Court soundly rejecting Royal Park's position and castigating it for its delay in seeking the documents. (Memorandum of Law in Support of Motion for Sanctions Against Plaintiff Roptal Park Investments SA/NV ("Def. Memo.") at 1–2, 14–15;

Smith Decl., Exh. B). In fact, that document is not a court decision at all, but an advocacy piece: a draft "synthese conclusie," or summary argument written by counsel for BNPPF. (Expert Legal Opinion of Johan Verbist dated July 4, 2016 ("Verbist Opinion"), attached as Exh. B to Declaration of Darryl J. Alvarado dated July 5, 2016, ¶¶17–19).

those documents is not willful. As Judge Moses held in <u>Deutsche Bank I</u>, "the assignee of a claim in litigation has a duty to obtain and produce the same documents and information to which the opposing parties would have been entitled had the assignors brought the claim themselves." 314 F.R.D. at 344; <u>see also</u> Order at 4–5, <u>Royal Park Investments SA/NV v. HSBC Bank USA, N.A.</u>, No. 14 Civ. 8175, slip op. at 5 (S.D.N.Y. Dec. 4, 2015); <u>In re Skelaxin (Metaxalone) Antitrust Litigation</u>, No. 12–md–2343, 2014 WL 129814, at *2 (E.D. Tenn. Jan. 10, 2014); <u>Travelers Indemnity Co. v. Kendrick Brothers Roofing, Inc.</u>, No. 10 Civ. 604, 2013 WL 6681240, at *2 (D. Idaho Dec. 18, 2013); <u>JPMorgan Chase Bank, N.A. v. KB Home</u>, No. 08 Civ. 1711, 2010 WL 1994787, at *6 (D. Nev. May 18, 2010); <u>Bank of New York v. Meridien BIAO Bank Tanzania Ltd.</u>, 171 F.R.D. 135, 149 (S.D.N.Y. 1997); <u>Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.</u>, 105 F.R.D. 16, 33–34 (S.D.N.Y. 1984). A party cannot avoid enforcement of that obligation by asserting that its failure to foresee the need to secure documents at the time of assignment was innocent.

█ Royal Park insists that at the time it acquired the portfolio, "litigation regarding these assets was not contemplated. At the time of Royal Park's formation, the focus was only on portfolio management, in order to limit downside credit risk and maximize recoveries where possible on the investments acquired from Fortis Bank." (Frans Decl., ¶ 9). While this may be true, it is immaterial to the current motion. U.S. Bank does not allege that Royal Park has destroyed evidence, such that it would be relevant when it first anticipated litigation and whether it "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Rather, U.S. Bank seeks sanctions for failure to comply with a discovery order, and for that purpose, accepting the assignment of claims without obtaining a concomitant commitment for the production of relevant documents is sufficient to constitute willfulness.

Furthermore, as Judge Moses found in <u>Deutsche Bank II</u>,

[Royal Park] fully understood the importance of acquiring potentially discoverable documents from its assignors—and the risks of failing to do so—when it settled the Brussels action on April 26, 2013, and, in the process, released any and all claims "that arise under or relate in any way to any of the Instruments (as defined in the PTA) sold under the PTA."

2016 WL 4613390, at *8. As Judge Moses concluded,

[H]aving knowingly waived its rights to compel documents from its assignors, RPI cannot use its inability to do so, or the failure of its more recent efforts to obtain voluntary cooperation, as justification for a court order relieving it of the obligation to produce otherwise-discoverable documents from their files.

<u>Id.</u> Thus, even after Royal Park contemplated litigation over the portfolio and had initiated the Brussels action to obtain relevant documents, it settled that proceeding without securing all necessary information. Royal Park may well have had good business reasons to terminate the Brussels action, including facilitating the sale of certain assets from its portfolio. (Frans Decl., ¶ 31). It also apparently believed that confirming its standing to pursue the claims asserted in this and other actions by obtaining "clarification" of the PTA from BNPPF to be more important than obtaining the documents it had originally sought. But, whatever the motivation for its actions, those actions were willful, and Royal Park must accept the consequences.

## C. Efficacy of Lesser Sanctions

█ A court should seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future. <u>See</u> <u>Verna v. U.S. Bank National Association</u>, 15–CV–1127, 2016 WL 5107115, at *3 (N.D.N.Y. Sept. 20, 2016); <u>Grammar v. Sharinn & Lipshie, P.C.</u>, No. 14 Civ. 6774, 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016); <u>Hawley v. Mphasis Corp.</u>, 302 F.R.D. 37, 46 (S.D.N.Y. 2014). Severe sanctions such as dismissal and judgment by default are to be applied sparingly, where no other sanction will suffice. <u>See</u> <u>Agiwal</u>, 555 F.3d at 302. Here, dismissal of Royal Park's claims would

be unnecessarily draconian. An order of preclusion that more closely ties the remedy to any prejudice suffered by U.S. Bank is more appropriate.

### D. Duration of Non–Compliance

U.S. Bank has long sought documents in the possession of the Assignors, and I ordered their production in March 2016. Most significantly, there is no prospect that Royal Park will ever comply, as it represents that BNPPF will not be forthcoming with the information. There is therefore no reason to delay in imposing a remedy.

### E. Notice

On April 19, 2016, when I declined to stay my order directing Royal Park to produce documents from the Assignors, I indicated that, if it failed to comply, U.S. Bank could move to an order of preclusion or other appropriate remedy. Royal Park was therefore on notice that it could be subject to the full range of sanctions under Rule 37(b).

### F. Prejudice

As discussed above, a showing of prejudice is not always necessary to the imposition of sanctions. See Southern New England Telephone Co, 624 F.3d at 148–49; Design Strategy, 469 F.3d at 296. Here, however, prejudice is pivotal. First, since U.S. Bank seeks the most drastic sanctions available, it is fair to ask whether it has been harmed by the failure to receive what the court ordered produced. Second, this is a case where the deterrent function of sanctions has little independent value. To be sure, the Second Circuit has stated that

> we, along with the Supreme Court, have consistently rejected the "no harm, no foul" standard for evaluating discovery sanctions .... Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations, Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants.

Southern New England Telephone Co, 624 F.3d at 148–49 (citations omitted). But this is not the usual case where the non-moving party has, after the issuance of a court order, exercised a choice not to comply with it. Rather, Royal Park's willful conduct occurred even before the law suit commenced, when it took assignment of claims without acquiring the rights to access information that it might need to litigate them. In this context, the deterrent value of a sanction is diminished, leaving protection of the moving party against prejudice as the primary consideration.

U.S. Bank contends that it has been prejudiced in relation to three constellations of issues by Royal Park's failure to produce Assignor documents. First, it argues that some of the missing documents are necessary to challenge Royal Park's ownership of the claims in the litigation and its standing to sue, as well as to support a statute of limitations defense with respect to certain claims. Next, U.S. Bank maintains that documents relating to the Assignors' valuation of the certificates at issue are needed to assess causation and damages. Finally, the defendant asserts that it needs Assignor documents relevant to the plaintiff's theory of the case, specifically to Fortis's knowledge of the causes of mortgage delinquencies and of their impact on the trusts. I will address each group of documents in turn.

#### 1. Ownership, Standing, and Statute of Limitations

The ownership and standing issues identified by U.S. Bank fall into two categories. First, the defendant argues that any noncontractual claims that the Assignors possessed were not transferred to Royal Park under the terms of the PTA. (Tr. at 11–13; Synthesis Conclusion dated Jan. 9, 2013, attached as Exh. B to Smith Decl., at 40).[5] Further, U.S. Bank contends that this gap cannot be filled by the post hoc representations made by BNPPF in connection with the settlement of the Brussels proceeding. (Tr. at 14).

---

5.  "Tr." refers to the transcript of the oral argument held on August 29, 2016.

On the latter point, U.S. Bank is surely correct. Subsequent commentary by one of the parties to a contract (assuming that BNPPF, as the successor to Fortis Bank, stands in the shoes of its predecessor for these purposes), offered in connection with a law suit, cannot shed light on the original meaning of the instrument. "[T]he intention of a party entering into a contract is determined by an objective reading of the language of the contract, not by that party's statements in subsequent litigation." Varilease Technology Group, Inc. v. United States, 289 F.3d 795, 799 (Fed. Cir. 2002); see also Pine Top Receivables of Illinois, LLC v. Banco de Seguros del Estado, No. 12 C 6357, 2013 WL 2574596, at *3 (N.D. Ill. June 11, 2013) (finding, under Illinois law, that "courts interpret contracts according to the objective intent of the parties, as determined by the unambiguous language of the written instrument, not by subsequent statements of subjective intent.").

But this is a pyrrhic victory for U.S. Bank. Royal Park has submitted an opinion, thus far unrebutted, by Dr. Johan Verbist, an expert in Belgian law. Dr. Verbist concludes that when there is an assignment,

> [a]ll "accessory rights" are transferred automatically, by way of law, to the transferee, by operation of law, with the "principal good" being transferred, even in the absence of an explicit contractual provision to that effect. Moreover, under Belgian law, a Court need not investigate the common intent of the parties on the issue since such a transfer operates automatically by operation of law.

(Verbist Opinion, ¶ 12 (footnotes omitted)). Accordingly, U.S. Bank has not demonstrated the legal relevance of documents relating to the transfer of noncontractual claims to Royal Park, since ownership of those claims, and standing to assert them, is apparently established as a matter of law.

Next, U.S. Bank questions Royal Park's ownership of particular certificates within the Covered Trusts, and it complains that the records provided by the plaintiff are incomplete and unsupported by a full set of trade tickets. (Tr. at 15–16; Def. Memo. at 20–21). Here, the absence of documentation potentially creates prejudice for Royal Park, not for U.S. Bank. Royal Park must own the certificates in order to have standing to sue on them, and it bears the burden of proof to demonstrate standing. See Clapper v. Amnesty International USA, 568 U.S. 398, 133 S.Ct. 1138, 1148–49, 185 L.Ed.2d 264 (2013); Natural Resources Defense Council, Inc. v. U.S. Food and Drug Administration, 710 F.3d 71, 79 (2d Cir. 2013). Thus, to the extent that Royal Park is unable to demonstrate the authenticity and sufficiency of the evidence that it relies on to prove ownership of any particular certificate, it will be unable to assert claims with respect to that certificate.

U.S. Bank also complains that it has been deprived of evidence necessary to support a statute of limitations defense with respect to certain certificates that may have been originally purchased by Scaldis Capital Limited ("Scaldis"), an entity incorporated in the Bailiwick of Jersey, before ultimately being assigned to Royal Park. (Def. Memo. at 21). Indeed, the United States District Court for the Central District of California dismissed claims asserted by Royal Park with respect to certificates originating from Scaldis on the ground that they were barred by Jersey's statute of limitations. In re Countrywide Financial Corp. Mortgage–Backed Securities Litigation, Nos. 11–ML–2265, 13–CV–3294, 13–CV–3295, 2014 WL 3529677, at *5–6 (C.D. Cal. July 14, 2014) ("Countrywide").

U.S. Bank's contention may ultimately prove to have merit, but at this juncture it is not adequately supported by fact or law. The defendant's basis for suggesting that any of the certificates at issue here originated with Scaldis appears highly speculative. On one hand, in his declaration filed in opposition to the instant motion, Mr. Frans traces the ownership of each of the certificates in question (Frans Decl., ¶¶ 10–16) and concludes that "[n]one of the Certificates at issue in this action were purchased or transferred by the commercial paper conduit [Scaldis]" (Frans Decl., ¶ 17). On the other hand, at his deposition he appeared less certain. For example, he did not know whether Royal Park had any documents showing the transfer of certificates from Scaldis to Fortis to Royal Park. (Deposition of Danny Frans dated May

19, 2016, excerpts attached as Exh. C to Smith Decl., at 305). Such ambiguity must be resolved before I would be prepared to sanction Royal Park for the failure to produce Assignor documents relating to Scaldis.

Moreover, U.S. Bank's legal theory is less than clear. The court in Countrywide relied on the statute of limitations to dismiss fraud claims arising out of certificates originating from Scaldis. Id. at *6. But the claims here are for breach of contract and breach of trust. Yet, U.S. Bank has proffered no evidence of the Jersey statute of limitations applicable to such claims.

## 2. Damages

Next, U.S. Bank argues that it needs Assignor documents that have not yet been produced in order to rebut Royal Park's claimed damages. The defendant's theory is that some or all of the damages that Royal Park now claims were incurred prior to any breach by U.S. Bank and therefore could not have been caused by such a breach. (Def. Memo. at 18–19; Tr. at 22–31). U.S. Bank points to certain documents that it has obtained, showing that some of the RMBS at issue were substantially written down before it had engaged in any alleged misconduct. For example, Fortis Park Lane Ireland transferred its interest in the SASC–2007 EQI Trust to Fortis Bank SA/NV, Cayman Branch in June 2008 for a price of "0.00." (Purchase and Sale Agreement, dated as of June 24, 2008 between Fortis Bank SA/NV, Cayman Islands Branch (the Seller) and Fortis Park Lane Ireland Limited (the Purchaser) ("6/24/08 PSA"), attached as Exh. Z to Smith Decl., at RPI–USBANK000118). Pursuant to the agreement governing the transfer, this represented the fair market value of the RMBS as of the date of the transfer. (6/24/08 PSA at RPI–USBANK000109). Therefore, U.S. Bank argues, none of the losses incurred by these RMBS could be attributed to its conduct. Moreover, the defendant is hamstrung in its ability to make equivalent arguments with respect to most of the other RMBS at issue because similar documentation regarding valuation is exclusively in the hands of the Assignors.

As convincing as this argument may be, it does not yet warrant foreclosing Royal Park's damages evidence altogether. Neither party has proffered evidence from a damages expert suggesting that the missing documentation is or is not essential to a damages analysis. In connection with its motion for class certification in the Deutsche Bank case, Royal Park has submitted the affidavit of an economic expert who opines:

> There are multiple widely-used techniques for performing [ ] a valuation analysis, including discounted cash flow ("DCF") analysis, analysis of market and transaction prices, and third-party pricing services.... Components of these methodologies include quoted market prices, indicative quotes for proxy instruments, quotes from recent and less regular transactions, broker quotes, and valuation modeling that is based on industry standard models as well as more sophisticated modeling techniques.

(Expert Report of W. Scott Dalrymple, CFA, attached as Exh. A to Declaration of Lucas F. Olts dated May 26, 2016 in 14 Civ. 4394, ¶ 57 (footnote omitted)). Whether any such analysis could be conducted without access to the documentation sought by U.S. Bank, and, indeed, whether U.S. Bank's own analysis would necessarily require such documentation cannot be determined on the basis of the current record. The defendant has therefore not yet demonstrated prejudice flowing from its inability to gain access to the Assignor valuation documents.

## 3. Royal Park's "Theory of the Case"

Finally, U.S. Bank contends that it needs Assignor documents that go to Royal Park's theory of the case. According to the defendant,

> Discovery regarding the Assignors' due diligence and investigations is probative of many of U.S. Bank's defenses and attacks on Royal Park's claims, including, for example that sophisticated, knowledgeable, active investors—not the Trustee—were intended to drive remedial measures under the Governing Agreements by directing and indemnifying the Trustee to take action.

(Def. Memo. at 23). Thus, U.S. Bank seeks "documents about the investigation that Fortis conducted" and "due diligence records." (Tr. at 33). This information might be relevant, or even critical, in a fraud case brought against the originators of the RMBS, but it is not germane here. As Judge Moses found,

> Deutsch Bank's contractual obligations as Trustee were triggered, if at all, by its own actual knowledge of the alleged breaches [of representations and warranties] and Events of Default, not the knowledge (or suspicion) of [Royal Park], its assignors, or anyone else. Thus, discovery into what plaintiff knew, and when plaintiff knew it, cannot tend either to prove or to disprove defendant's alleged breaches.

Deutsche Bank II, 2016 WL 4613390, at *13 (citation and footnote omitted). The same analysis applies to the claims against U.S. Bank in this case. Therefore, the absence of Assignor documents does not hamper the defendant in rebutting Royal Park's theory of the case.

As U.S. Bank has not yet demonstrated prejudice from the failure of Royal Park to produce Assignor documents, its application for terminating sanctions or for a more tailored order of preclusion is denied.

### G. Class Representative Status

To the extent that drastic sanctions are not warranted, U.S. Bank seeks disqualification of Royal Park from acting as class representative. Unless and until the anticipated class certification motion is referred to me for a report and recommendation, it would be inappropriate for me to offer an opinion on Royal Park's adequacy as a class representative. To be sure, the preclusion of certain evidence or other discovery rulings may ultimately impact the class determination, but, as things now stand, that determination will be made by the Honorable Victor Marrero, U.S.D.J.

### Conclusion

For the reasons discussed, U.S. Bank's motion for sanctions (Docket no. 96) is denied. It may, however, renew its application when and if it can demonstrate that it has suffered prejudice as a consequence of Royal Park's failure to comply with my order to produce documents in the possession of the Assignors.

SO ORDERED.