251 F.3d 307 (2nd Cir. 2001)
 ROBIN SHADE, As Next Friend of Minor Plaintiffs ORLANDO VELEZ-SHADE, JR., and DANNY VELEZ-SHADE, Plaintiffs-Appellants,
v.
HOUSING AUTHORITY OF THE CITY OF NEW HAVEN, JOHN YOST and JOHN DIDUCA, Defendants-Appellees,
UNITED STATES OF AMERICA, Consolidated Defendant-Appellee.
 Docket No. 00-6160
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued January 31, 2001
Decided April 30, 2001
As Amended May 10, 2001.
Modified June 6, 2001
 
 Consolidated appeal of two judgments in cases involving alleged lead poisoning of minor plaintiffs at two residential housing units in New Haven, Connecticut. In the first case, the plaintiffs appeal two orders of the United States District Court for the District of Connecticut (Ellen Bree Burns, Judge) granting the defendants' motion for a new (second) trial and denying the plaintiffs' subsequent motion for a new (third) trial. They also appeal a decision by Judge Burns allowing the defendants' expert to testify in the second trial. In the second case, the plaintiffs challenge an order of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge) granting summary judgment to the defendant United States of America on claims brought by the plaintiffs under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.
 Affirmed in part; reversed in part.[Copyrighted Material Omitted]
 PETER A. KELLY, New Haven, CT, for Plaintiffs-Appellants.
 ERIC P. SMITH, Lynch, Traub, Keefe, and Errante, P.C. (Donn A. Swift, of counsel), New Haven, CT, for Defendant-Appellee Housing Authority of the City of New Haven.
 JOHN W. MILLS, Murphy and Karpie, LLC, Bridgeport, CT, for Defendant-Appellee John Yost.
 KEITH R. AINSWORTH, Evans, Feldman & Boyer, LLC, New Haven, CT, for Defendant-Appellee John Diduca.
 WILLIAM A. COLLIER, Assistant United States Attorney for the District of Connecticut, Hartford, CT (Stephen C. Robinson, United States Attorney for the District of Connecticut and Robert H. Farrell, Office of the Regional Counsel, U.S. Department of Housing and Urban Development, of counsel), for Consolidated Defendant-Appellee United States of America.
 Before: STRAUB, POOLER, and SACK, Circuit Judges.
 SACK, Circuit Judge:
 
 
 1
 This appeal involves two separate cases in which the plaintiffs sought redress for the same injuries -- the alleged lead poisoning of Orlando Velez-Shade, Jr. and Danny Velez-Shade (the "minor plaintiffs") at two Section 8[1] residences in New Haven, Connecticut. In the first portion of the appeal, the minor plaintiffs, through their grandmother, plaintiff Robin Shade, challenge two orders of the United States District Court for the District of Connecticut (Ellen Bree Burns, Judge). The first order granted the motion of defendants John Yost, John Diduca, and Housing Authority of New Haven ("HANH") for a new (second) trial limited to the issue of damages. The second order, which followed that new trial and a jury verdict of zero damages, denied the plaintiffs' motion for a new (third) trial. The plaintiffs also object to the introduction of certain expert testimony at the second trial. We reverse the district court's grant of a new trial on damages after the first verdict, direct the court to enter judgment on that verdict, and therefore do not address the plaintiffs' remaining arguments in this regard.
 
 
 2
 In the second portion of the appeal, the plaintiffs challenge an order of the United States District Court for the District of Connecticut (Janet Bond Arterton, Judge) granting summary judgment to the defendant United States of America. The district court relied on its finding that HANH is not an agent of the United States in ruling that the plaintiffs failed to state a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. We affirm the grant of summary judgment.
 
 BACKGROUND
 I. Shade v. HANH, Yost, and Diduca
 A. The Plaintiffs' Injuries and the Parties
 
 3
 Orlando Velez-Shade, Jr., born March 1, 1990, lived in a Section 8 residential property at 282 Davenport Avenue in New Haven between February 1992 and January 1993. Defendant John Yost is the owner and landlord of the 282 Davenport Avenue property. From February 1993 to June 1994, Orlando resided in a different Section 8 house located at 693 Dixwell Avenue in New Haven and owned by defendant John Diduca. HANH is a public corporation created under Connecticut law that is responsible under federal law for notifying tenants to whom it offers financial assistance of the dangers of lead paint and for inspecting and correcting lead-paint hazards in Section 8 housing. See 42 U.S.C. § 4822; 24 C.F.R. §§35.125, 35.1210, 35.1215.
 
 
 4
 Orlando, through his grandmother, plaintiff Robin Shade, claims that at both housing facilities he was exposed to paint containing more than 0.06% lead by weight. This exposure was confirmed in blood tests conducted in July 1992 and April 1993 and has forced Orlando to undergo hospitalization and various medical treatments, including two courses of chelation therapy. Evidence adduced at trial supported Orlando's assertion that lead poisoning has also caused a variety of enduring physical and mental defects: He has difficulty with language, performs poorly in school -- at age 10, he was still in third grade -- and exhibits the physical symptoms of Attention Deficit Hyperactivity Disorder, a condition often associated with lead poisoning.
 
 
 5
 Danny Velez-Shade, Orlando's younger brother, also claims that he was exposed to lead poisoning, but only at the second Section 8 housing location at 693 Dixwell Avenue. His medical records tell a story similar to Orlando's, including chelation therapy and extensive testing. Like his brother, Danny suffers from delayed language abilities, which in his case have required special education beginning in preschool, and Attention Deficit Hyperactivity Disorder symptoms. According to their treating physician, both boys can expect to suffer the consequences of the alleged lead poisoning for the foreseeable future.
 
 B. Procedural History
 
 6
 In 1995, Robin Shade filed suit in the United States District Court for the District of Connecticut on behalf of her grandchildren, the minor plaintiffs. She asserted a §1983 claim against HANH, alleging that it had deprived Orlando and Danny of federal statutory rights provided to them under the Lead-Based Paint Poisoning Prevention Act ("LPPPA"), 42 U.S.C. §4821-4846, which, inter alia, obligates local housing authorities like the HANH to inspect and provide for the removal of lead paint hazards in Section 8 housing.
 
 
 7
 Shade also asserted supplemental state-law claims against John Yost and John Diduca, the landlords of 282 Davenport Avenue and 693 Dixwell Avenue, respectively. These claims were grounded in theories of common-law negligence and negligence per se predicated on Yost and Diduca's alleged violations of the Connecticut Unfair Trade Practices Act and other Connecticut statutes addressing lead-paint hazards.
 
 
 8
 In June 1998, twelve of the causes of action asserted in the complaint were tried before a jury. On June 29, 1998, after closing arguments, the district court, at the defendants' request, instructed the jury that it should apportion compensatory damages among the defendants and gave the jury a verdict form calling for individually calculated damages against each responsible party. The next day, the jury returned a verdict in favor of the plaintiffs on each cause of action. In accordance with the verdict form, the jury answered a number of interrogatories indicating its findings and calculations of damages.
 
 
 9
 The jury apportioned the damages as follows. Orlando Velez-Shade received a total of $350,000 in compensatory damages. Of that amount, $100,000 was apportioned against HANH for the 282 Davenport Avenue apartment, while $50,000 was apportioned against Yost for the same property; $150,000 was attributed to HANH for the 693 Dixwell Avenue property, and $50,000 was apportioned to Diduca for that housing unit. Danny Velez-Shade received $200,000 for his injuries at the 693 Dixwell Avenue apartment, of which $150,000 was apportioned to HANH and $50,000 to Diduca.
 
 
 10
 After the jury was dismissed, the defendants filed post-trial motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and in the alternative for a new trial under Fed. R. Civ. P. 59. In a ruling dated August 26, 1999, the court denied the defendants' motion for judgment as a matter of law but granted a new trial limited solely to the issue of damages. The court agreed with the defendants that the jury's judgment was "inconsistent and improper" because the jurors followed the court's incorrect instructions to apportion damages among the defendants. The court reasoned that the jury had erred because it had awarded each plaintiff two different awards to be paid by the defendants separately as compensation for a single injury, when it should have calculated one sum as compensation for each plaintiff's injury at each property and awarded that amount jointly and severally against the responsible defendants.
 
 
 11
 The new trial on damages began on January 26, 2000. It consisted primarily of the conflicting assertions of the parties' experts as to what had caused the minor plaintiffs' alleged injuries. At the conclusion of the trial, the jury was instructed on the law of joint and several liability and returned a verdict of zero damages, finding that both minor plaintiffs had failed to show that exposure to lead was a substantial factor in causing their injuries. The court entered judgment accordingly.
 
 
 12
 Shortly thereafter, the plaintiffs filed a motion for a new trial pursuant to Fed. R. Civ. P. 59, arguing that the outcome of the second trial represented a "miscarriage of justice" because it was inconsistent both with the finding of liability in the first trial and with medical evidence presented at the second.
 
 
 13
 The district court denied that motion on April 11, 2000, holding that the jury properly resolved the question of damages by weighing the credibility of each party's expert, both of whom the court found qualified to testify on the issue of lead poisoning.
 
 
 14
 The plaintiffs timely appealed the original grant of the defendants' motion for a new trial and the denial of their motion for a third trial.
 
 II. Shade v. United States
 A. The Plaintiff's Injuries and the Parties
 
 15
 In a separate case that was consolidated in June 1996 with the action against HANH, Yost, and Diduca, the plaintiffs sought damages from the United States for the same injuries at issue in the suit against the landlords and HANH.
 
 B. Procedural History
 
 16
 In August 1995, the plaintiffs filed suit against the United States in the United States District Court for the District of Connecticut asserting claims under the FTCA. Specifically, the plaintiffs alleged negligence on the part of the "Secretary of Housing and Urban Development [("HUD")]-- acting through its local agent, the Housing Authority of New Haven." On the complaint's theory, because this "local agent" had negligently failed to comply with the lead-paint requirements of the LPPPA, the United States was liable under the FTCA.
 
 
 17
 On July 14, 1997, the United States moved for summary judgment and the plaintiffs responded by arguing that material issues of fact existed as to whether "HUD violated its duty to monitor and enforce HANH's compliance" with the LPPPA and whether "HANH was the agent" of the United States.
 
 
 18
 On March 31, 1998, the district court granted the United States' motion, concluding that the plaintiffs had failed to show the requisite "direct supervisory control of the day-to-day operations" of HANH by the United States. The court therefore held that there was no agency relationship between HUD and HANH as a matter of law and entered judgment for the United States on April 1, 1998.
 
 
 19
 The plaintiffs' appeal of that judgment was consolidated with their appeal from the adverse rulings in Shade v. HANH.
 
 DISCUSSION
 I. Shade v. HANH, Yost, and Diduca
 
 20
 The plaintiffs challenge three rulings of the district court in the first portion of this appeal. The first granted the defendants' motion for a new trial on damages, the second allowed the defendants' expert to testify about the cause of the plaintiffs' alleged injuries at the second trial, and the third denied the plaintiffs' motion for a third trial following an adverse jury verdict in the second. Because we reverse the district court with respect to its first ruling, we do not consider the plaintiffs' objections with respect to the subsequent proceedings.
 
 
 21
 The plaintiffs first argue that the district court erred in ordering a second trial limited to the issue of damages on the basis of alleged inconsistencies in the original verdict. "We review the district court's grant of a new trial de novo." Turley v. Police Dep't of the City of New York, 167 F.3d 757, 760 (2d Cir. 1999).
 
 
 22
 We need not and do not decide whether the district court and the defendants are correct that the court should have instructed the jury in the first trial on the law of joint and several liability and that the verdict sheet was therefore erroneous to the extent it called for apportionment among the defendants. Neither the content of those instructions nor the coherence of the first verdict are ultimately dispositive of whether the court erred in ordering a second trial. In this case, the conduct of the defendants at trial is determinative. They not only failed to raise a timely objection to the court's instructions and verdict sheet, but indeed specifically requested the apportionment charge that they now assign as error and urged the court to use the verdict form that engendered the alleged inconsistency. Fed. R. Civ. P. 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Where, as here, the party fails to object to the instruction before the jury begins deliberations, a subsequent challenge based on that charge should be entertained only if the alleged errors are "fundamental." See Frederic P. Wiedersum Assocs. v. National Homes Constr. Corp., 540 F.2d 62, 66 (2d Cir. 1976). An error is fundamental under this standard only if it is "so serious and flagrant that it goes to the very integrity of the trial." Modave v. Long Island Jewish Med. Ctr., 501 F.2d 1065, 1072 (2d Cir. 1974). In order to warrant relief, such a "fundamental" error must be even more egregious than the type of "plain" errors that might suffice to excuse a procedural default in a criminal trial. See Travelers Indem. Co. v. Scor Reinsurance Co., 62 F.3d 74, 79 (2d Cir. 1995) ("Fundamental error is narrower than the plain error doctrine applicable to criminal cases.").
 
 
 23
 The district court should have applied the "fundamental error" standard of review to the defendant's request for a new trial. Analyzing the result of the first trial under this stringent standard, we conclude that vacating the original jury verdict was not "necessary to correct a fundamental error or to prevent a miscarriage of justice" caused by the allegedly erroneous jury instruction, Cohen v. Franchard Corp., 478 F.2d 115, 124 (2d Cir. 1973), and that the district court therefore erred in ordering a second trial.
 
 
 24
 Even if we were to conclude that the disputed instructions were incorrect, the defendants cite no cases in which we have held that a jury verdict or instruction constituted fundamental error solely because it conflicted with the law of joint and several liability. It is true, as the defendants observe, that in Rodick v. City of Schenectady, we ordered a new trial because of a verdict's inconsistency despite the defendants' failure to object to the erroneous instruction and verdict form. See 1 F.3d 1341, 1347-49 (2d Cir. 1993). In that case, however, the verdict was inconsistent not only with the law of joint and several liability, but also with the doctrine of respondeat superior. See id. at 1348. The jury there had attributed to the vicariously liable defendant "a damage amount ten times greater than the liability assessed against each of the [directly responsible] individual defendants and 2.5 times greater than the damages assessed against the [individual defendants] collectively." Id. at 1349. That verdict, we concluded, was "so contrary to basic concepts of respondeat superior that it would be a miscarriage of justice to let it stand." Id. at 1348.
 
 
 25
 In this case, by contrast, there is no such egregious inconsistency with the doctrine of respondeat superior. Nor do we see how holding the defendants to a jury verdict that faithfully followed an instruction and verdict form that they themselves urged upon the court could give rise to a miscarriage of justice. "Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions." Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 55 (2d Cir. 1992). We therefore conclude that this case does not present the type of fundamental error that undergirded our decision in Rodick. In the absence of such an error, "a party's failure to bring alleged inconsistencies in the verdict sheet to the court's attention before the jury has been discharged waives the right to have the alleged inconsistencies remedied by a new trial." United States Football League v. National Football League, 842 F.2d 1335, 1367 (2d Cir. 1988).
 
 
 26
 Because there was no fundamental error in the court's instructions or in the original jury verdict, the district court should not have granted the defendants' motion for a new trial. We therefore reverse that order and instruct the Court to enter judgment for the plaintiffs on the first verdict. Accordingly, we need not address the two subsequent rulings of the district court to which the plaintiffs objects.
 
 II. Shade v. United States
 
 27
 The sole issue in the plaintiffs' appeal of the case against the United States is whether the district court erred in granting summary judgment to the United States on the ground that the plaintiffs failed to state a viable claim under the FTCA. We hold that it did not.
 
 
 28
 We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non moving party. See Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), cert. denied, 529 U.S. 1098 (2000). Summary judgment is appropriate where "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
 
 
 29
 A complaint states a cause of action under the FTCA if it presents a claim that is "[1] against the United States, [2] for money damages,... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)).
 
 
 30
 With regard to the sixth requirement-- the only one at issue on this appeal -- the Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State the source of substantive liability under the FTCA." Id. at 478; see also, e.g., Miree v. DeKalb County, 433 U.S. 25, 29 n.4 (1977); United States v. Muniz, 374 U.S. 150, 153 (1963); Rayonier Inc. v. United States, 352 U.S. 315, 318 (1957). Thus, the United States can be made a defendant under the FTCA only if its actions would render it liable under relevant state law.
 
 
 31
 The plaintiffs do not challenge the district court's finding that HANH is not an agent of the United States. Instead, they concoct a rather complex argument to attack the district court's grant of summary judgment. Recognizing that they must allege that the United States itself, acting through its employees at HUD, violated Connecticut tort law, the plaintiffs first maintain that federal law imposes a duty on HUD to monitor local housing authorities' compliance with the responsibilities imposed on those authorities by the LPPPA. They then assert that Connecticut recognizes a tort of negligent supervision that would apply to a private person in a position analogous to HUD. And since, the plaintiffs assert, there is a genuine issue of material fact as to whether HUD violated its federal duties to supervise the HANH, the district court erred in granting summary judgment to the United States.
 
 
 32
 There are two fatal flaws in this reasoning. First, aside from citing a single district court decision from another circuit that is only tangentially related to their argument, Ashton v. Pierce, 541 F.Supp. 635 (D.D.C. 1982), aff'd, 716 F.2d 56 (D.C. Cir. 1983) (holding, inter alia, that public housing tenants have a right to seek an injunction requiring HUD to enforce the provisions of a contract between the agency and a local housing authority), the plaintiffs have not presented either authority establishing or any cogent theory upon which to establish that HUD is under a legal duty to "supervise" local housing authorities like HANH.
 
 
 33
 Second, even assuming that federal law does impose a duty on HUD to supervise HANH and that the plaintiffs could prove that HUD breached that duty, the plaintiffs have failed to show that a private person in HUD's position would be liable to the plaintiffs under Connecticut law. Although Connecticut courts have recognized a cause of action for negligent supervision in the context of special, particularized relationships -- for example, between parent and child, see Kaminski v. Town of Fairfield, 216 Conn. 29, 34, 578 A.2d 1048, 1051 (1990), between tavern owner and patron, see Nolan v. Morelli, 154 Conn. 432, 441, 226 A.2d 383, 388 (1967), and between employer and employee, see Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 344 (D. Conn. 2001) -- it does not recognize a tort for negligent supervision that would apply to a private person in the circumstances presented here or analogous to those presented here.
 
 
 34
 Because a private person in the position of HUD would not be liable under Connecticut law, the United States is not liable to the plaintiffs under the FTCA. Summary judgment was therefore proper.
 
 CONCLUSION
 
 35
 We therefore reverse the district court's grant of the defendants' motion for a second trial in the plaintiffs' case against HANH, Yost, and Diduca and direct the district court to enter judgment on the original jury verdict. We affirm the district court's grant of summary judgment to the United States in the plaintiffs' case against the government.
 
 
 
 NOTE:
 
 
 [1]
 The Section 8 designation indicates that the plaintiff's occupancy of the housing units was subsidized with rental assistance under Section 8 of the United States Housing Act, 42 U.S.C. § 1437f.