21-1331
Salamone v. Douglas Marine Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2022

(Argued: February 8, 2023                     Decided: August 8, 2024)

Docket No. 21-1331

_____

KENNETH E. SALAMONE and RUFSTR RACING, LLC,

*Plaintiffs-Appellees*,

- v. -

DOUGLAS MARINE CORPORATION,

*Defendant-Appellant*.[*]
_____

Before: KEARSE, PARKER, and SULLIVAN, *Circuit Judges*.

Appeal by defendant Douglas Marine Corporation from so much of an

August 23, 2021 amended judgment of the United States District Court for the

---

[*] The Clerk of Court is instructed to amend the official caption to conform with the above.

Northern District of New York, Mae A. D'Agostino, *Judge*, as requires defendant to pay plaintiffs $451,500 in damages for breach of contract, upon plaintiffs' motion pursuant to Fed. R. Civ. P. 59(e) to alter the original judgment entered on a jury verdict awarding plaintiffs damages in the amount of $131,171. On appeal, defendant contends principally that the district court erred in increasing the amount awarded based on its ruling that the jury's damages calculation constituted a fundamental error that excused plaintiffs' failure to object to the verdict prior to the dismissal of the jury. *See Salamone v. Douglas Marine Corp.*, No. 19-CV-01213, 2021 WL 3723105 (N.D.N.Y. Aug. 23, 2021). Defendant also contends that the court erred in failing to instruct the jury on a mitigation-of-damages defense and in denying defendant's post-amended-judgment motion to dismiss the action for lack of personal jurisdiction. *See Salamone v. Douglas Marine Corp.*, No. 19-CV-01213, 2022 WL 111774 (N.D.N.Y. Jan. 12, 2022). We find merit only in defendant's challenge to the district court's Rule 59(e) ruling that increased plaintiffs' damages recovery above the amount awarded by the jury, which we conclude violated principles of federal procedure. We reverse the amended judgment to that extent; as neither side asked the district court to order a new trial, we remand with instructions to enter a further amended judgment that accords with the verdict returned by the jury.

Reversed in part, affirmed in part, and remanded for entry of a second amended judgment that grants plaintiffs damages in the amount awarded by the jury, along with such other relief awarded in the amended judgment as defendant has not challenged on appeal.

LEONARD F. LESSER, New York, New York (Nathaniel Levy, Simon Lesser, New York, New York, on the brief), *for Plaintiffs-Appellees*.

DANIEL R. LeCOURS, Albany, New York (Elliot A. Hallak, Harris Beach, Albany, New York, on the brief), *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Defendant Douglas Marine Corporation ("Douglas Marine") appeals from so much of an August 23, 2021 amended judgment of the United States District Court for the Northern District of New York, Mae A. D'Agostino, *Judge*, as requires Douglas Marine to pay plaintiffs Kenneth E. Salamone and his company RUFSTR Racing, LLC ("Plaintiffs"), $451,500 in damages for breach of contract, upon Plaintiffs' motion pursuant to Fed. R. Civ. P. 59(e) to alter or amend an April 22, 2021 judgment entered on a jury verdict awarding Plaintiffs damages in the amount of $131,171 (the "Original Judgment"). On appeal, Douglas Marine contends principally that the district court erred in entering the August 23, 2021 amended judgment increasing Plaintiffs'

- 3 -

damages award to $451,500 (the "Amended Judgment") based on its ruling that the jury's damages calculation constituted a fundamental error that excused Plaintiffs' failure to object to the verdict prior to the dismissal of the jury. Douglas Marine also contends that the court erred in failing to instruct the jury on its mitigation-of-damages defense, and in denying its post-Amended-Judgment motion to dismiss the action for lack of personal jurisdiction.

For the reasons that follow, we find merit only in Douglas Marine's challenge to the Rule 59(e) ruling increasing Plaintiffs' damages recovery above the amount awarded by the jury, which we conclude violated principles of federal procedure. We reverse the Amended Judgment to that extent; as neither side moved in the district court for a new trial, we remand for entry of a second amended judgment that grants Plaintiffs damages in the amount awarded by the jury, along with such other relief awarded in the Amended Judgment as Douglas Marine has not challenged on appeal.

## I. BACKGROUND

The following account of the principal events is based on facts stipulated by the parties, as well as facts described by the district court in its posttrial

Memorandum-Decision and Order granting, in pertinent part, Plaintiffs' Rule 59(e) motion, *see Salamone v. Douglas Marine Corp.*, No. 19-CV-01213, 2021 WL 3723105 (Aug. 23, 2021) ("*Salamone I*"), descriptions that are not challenged by either side.

A. *The Contract*

In December 2015, Plaintiffs entered into a contract with Douglas Marine to purchase a new, custom-made Skater 388 Race Boat (the "Skater") and boat trailer. The parties stipulated that the contract purchase price for the Skater was $542,117. The contract price did not include engines or certain other equipment that Plaintiffs were to purchase separately. On December 30, 2015, Plaintiffs made an initial payment to Douglas Marine of $300,000. On December 31, 2016, they paid Douglas Marine $61,500. In March 2017, Plaintiffs paid Douglas Marine $140,000 for engines that they had authorized Douglas Marine to order for the Skater.

Although the contract did not specify an agreed date for delivery, Salamone testified at trial that the boat was to be delivered by August 2016 so that he could race it during the 2016 season. Douglas Marine did not complete the boat by August 2016.

On June 27, 2017, Douglas Marine told Salamone the Skater was not completed; Salamone told Douglas Marine that Plaintiffs no longer wanted the Skater.

Douglas Marine asked and received Salamone's consent to sell the boat. Douglas Marine listed the Skater for sale, initially seeking the contract price, but lowering the asking price five times before the boat was eventually sold. Douglas Marine sold the Skater for $300,000 and the engines for $75,000; but it remitted only $50,000 to Plaintiffs.

B. *The Present Action*

Plaintiffs commenced the present action in September 2019, asserting breach of contract, along with several other claims that were dismissed during trial. Federal jurisdiction was premised on diversity of citizenship (New York and Connecticut for Plaintiffs, Michigan for Douglas Marine). The complaint alleged that Douglas Marine, incorporated and headquartered in Michigan, did business in New York through dealerships authorized to sell Douglas Marine power boats, including Skaters.

1. *Pretrial Proceedings*

Prior to answering the complaint, Douglas Marine sent a letter to the district court requesting permission to file a pre-answer motion to dismiss the action for lack of personal jurisdiction. It stated, *inter alia*, that Douglas Marine "ha[s] no

physical presence" in New York, "conduct[s] no business activities in New York," and "does not . . . transact with any dealers in New York." (Douglas Marine Letter to the District Court dated October 31, 2019, at 1.) Plaintiffs' responding letter asserted that Douglas Marine "contracted with a New York customer and afforded that New York customer with a 35% dealer discount because this transaction was arranged through Performance Marine in Bolton Landing, New York." (Plaintiffs' Letter to the District Court dated November 13, 2019, at 1.) The district court held a telephone conference to address Douglas Marine's proposed motion, stating at the outset, "[n]othing I say during this phone conference should be taken as an indication as to how I would rule on a motion." (Pre-Motion Conference Transcript, November 15, 2019 ("2019 Tr."), at 2.)

In the conference, Douglas Marine insisted that "[t]here was no dealer in this transaction" and that it was several years since it had used dealers. (2019 Tr. 3; *see id*. at 8-9.) Plaintiffs pointed out that it was also several years since Douglas Marine's contract with Plaintiffs. Plaintiffs maintained that Douglas Marine had consistently used dealers in New York and that the New York dealer Performance Marine, according to its owner Jason Saris, had been "intimately involved in this boat order," "procur[ing]" and "arrang[ing]" the purchase, and "routinely follow[ing] up" with Douglas Marine as to the progress of the boat's construction. (*Id*. at 3-9.)

The district court instructed the parties to confer in "good faith" in order to determine whether Douglas Marine needed to make a motion to dismiss for lack of personal jurisdiction. If Douglas Marine then saw "a bona fide reason to make this motion," the court would set a schedule for briefing. The court stated that

> [o]bviously, on a motion like this, if there are questions of fact, I don't think I need to be too--you don't have to be too imaginative to know at this stage what a judge is going to have to do with it. So, before you spend your clients' time and money, talk a little bit. If there's a bona fide reason to make this motion, go ahead and make it, but talk first.

(*Id*. at 12.)

Without further proposing a motion to dismiss the complaint, Douglas Marine filed its answer, asserting lack of personal jurisdiction as a defense. It made no pretrial motion to dismiss; nor did it raise a lack-of-personal-jurisdiction defense in opposing a motion by Plaintiffs for partial summary judgment, or request from the court or the jury any factual findings at trial that could warrant such a dismissal, or seek such a dismissal after the $131,171 jury verdict or the entry of judgment on that verdict. Douglas Marine made no motion to dismiss the action for lack of personal jurisdiction until after the court entered the Amended Judgment increasing the damages that had been awarded to Plaintiffs in the Original Judgment. As described in Part III below, the district court appropriately ruled that the defense had been

- 8 -

forfeited, *see Salamone v. Douglas Marine Corp.*, No. 19-CV-01213, 2022 WL 111774, at *5 (Jan. 12, 2022) ("*Salamone II*").

As to the merits of the case, following Douglas Marine's December 2019 answer to the complaint and a modicum of discovery and motion practice, the parties filed a detailed Joint Pre-trial Stipulation (or "Stipulation") stating their agreement on certain facts and their disagreement as to others. Among the 99 facts on which the parties agreed were the following:

12. The purchase price of the Skater under the . . . Contract was $542,117.00, which included as follows: (1) $568,009.00 for the basic race boat; (2) $56,750.00 for the full race canopy system (4-man double wide); (3) $19,250.00 for widening the hull; (4) $20,680.00 for the tunnel escape hatch; (5) $2,937.00 for the cockpit cover; (6) $166,400.00 for the hydraulic tilt trailer; and (7) $291,909.00 off of the price as a 35% "DEALER DISCOUNT".

. . . .

93. Plaintiffs paid Defendant a total of $501,500.00 for the Skater, Engines, Drives, and hydraulic tilt trailer.

94. Defendant received a total of $876,500.00 for the Skater, Engines, Drives, and hydraulic tilt trailer.

95. Defendant has only made one payment to Plaintiffs in the total amount of $50,000.00.

(Joint Pre-trial Stipulation at 5, 11.)

The Stipulation included 55 paragraphs as to matters on which the parties disagreed. More than a dozen of these "Facts In Dispute" concerned "[w]hat caused the delays in the Skater's construction" (*id*. at 13, ¶ 33) and reflected Douglas Marine's contention that any delays in its completion of the Skater were caused by indecisiveness on the part of Salamone (*see, e.g., id*. at 12-13, ¶¶ 5-7, 14-25).

2. *The Trial*

At the four-day trial, the evidence principally concerned (a) whether Saris and his company Performance Marine had acted as Douglas Marine's dealer in procuring the contract with Plaintiffs for construction of the Skater; (b) whether Salamone was the cause of delaying Douglas Marine's completion of the Skater; and (c) whether, after repudiating the contract, Salamone had hindered Douglas Marine's efforts to sell the Skater by initially insisting that it be listed at an unrealistically high asking price, and, thereafter, by causing a willing buyer to withdraw an offer that was higher than the eventual sale price. (*See, e.g.,* Trial Transcript, April 19-22, 2021 ("Tr."), at 325-26, 360-61, 470-71.)

a. *The Charge Conference*

Following the close of the evidence, the district court held a charge conference at which the court and the parties discussed, *inter alia*, how the jury charge and verdict sheet should address the issue of damages. Although in their Joint Pre-trial Stipulation the parties had agreed that the contract price for the boat was $542,117, Plaintiffs suggested that that number "ha[d] been increased," and that the contract price was "555559." Douglas Marine then pointed out that that number did not include $140,000 for the engines; Plaintiffs agreed and suggested that the total price was "695559." When Douglas Marine's attorney Elliot A. Hallak said that there were still more "add-ons to the contract," and "I think we also need to talk about the cost of the paint that was added on afterwards," the court interrupted:

> THE COURT: I just want to know what the contract price was.
>
> MR. HALLAK: So it would be 723559 plus 38,500 for the cost of the paint.
>
> THE COURT: As I look at your trial briefs, none of the numbers make any sense to me.

(Tr. 596.)

Eventually the parties agreed that "$723,559" was the contract price; but they disagreed as to whether that price included the paint. Plaintiffs contended that

- 11 -

the paint was included; Douglas Marine contended that the charge for the paint was an extra $38,500. The court stated that it would instruct the jury as to the agreed $723,559 contract price and as to the parties' respective positions as to whether $38,500 for the paint was included in the contract price.

In addition, consistent with the Stipulation, the parties agreed that Plaintiffs had paid a total of $501,500 to Douglas Marine and that Douglas Marine had remitted only $50,000 to Plaintiffs. But while Plaintiffs proposed that the court instruct the jury that their damages were thus $451,500, Douglas Marine refused to stipulate that Plaintiffs were damaged in that amount. It contended that Plaintiffs had both impeded the sale of the Skater at a price higher than Douglas Marine eventually received and caused Douglas Marine to incur storage costs because that eventual sale was delayed.

After Plaintiffs began to argue that the jury should be told that the total of all moneys Douglas Marine received with respect to the Skater was $876,500, the court said:

> You know what? You can go through whatever numbers you want during your summation. I'm going to tell the jury that the contract price was [$]723[,]559 . . . that the plaintiff[s] paid $501,500, and that the defendant remitted $50,000. Period. End of story.

You can dazzle them with your numbers in your summation.

(*Id*. at 613.)

b. *Plaintiffs' Summation as to Damages*

Counsel for Plaintiffs, in his summation to the jury, introduced his discussion of damages by saying that Douglas Marine

> received $886,500 [*sic*] for the boat, engines and drives; $501,500 of which was from plaintiffs.

> Think about that for a second. The defendants [*sic*] received $876,500 for a boat. They [*sic*] weren't even entitled to that amount of money under the contract with Mr. Salamone. They [*sic*] were entitled to $102,000 and change less and they [*sic*] paid, including [*sic*] the $50,000, that they [*sic*] repaid to Mr. Salamone.

> . . . .

> . . . . [T]here's no dispute between the parties that a contract existed. There is also no dispute that plaintiffs made each of the first two installment payments that he [*sic*] was required to make under the terms of the contract, totaling $361,500.

> There is no dispute, and it is stipulated, that the plaintiffs paid $140,000 for the engines and drives. . . .

> . . . .

> . . . I know that this is--has been repeated multiple times with respect to the numbers, but I think it's important. The evidence shows here--the plaintiff [*sic*] is required to show that

he's [*sic*] been damaged. The evidence shows that the plaintiff [*sic*] has. The contract price for the boat that Mr. Salamone was required to pay was $723,559. Again, the defendant received $300,000 from the plaintiff [*sic*] and that's not disputed. Another $140,000 for engines and drives, which is not disputed. $61,000-- $61,500 which is not disputed.

Defendant also received $300,000 from Mr. Sheker in the subsequent sale of the boat, and another $75,000 from Happy Days Marina.

(Tr. 645-48.)

After stressing Plaintiffs' contentions on the issues of liability, Plaintiffs'

counsel returned to damages, stating that

plaintiff [*sic*] owned the engines, drives and transoms and their proceeds. There's no dispute that plaintiffs paid 140,000 for the engines and drives. There's no dispute they were sold. There's no dispute that only $50,000 of the proceeds were ultimately paid to Mr. Salamone.

In addition to the--to the $50,000, *Mr. Salamone* [*sic*] *received an additional $25,000 for the engines*. The evidence clearly shows that the drives and transoms were sold as part of the defendant's subsequent sale and garnered $78,230. None of that money was paid back to the plaintiff [*sic*].

(Tr. 653 (emphases added).) Plaintiffs' counsel ended his summation with the

following:

The amounts that Mr. Salamone paid and the amounts that were ultimately due to the defendant are clear. There's no dispute. The dispute arises with respect to when the boat was done. The evidence shows the boat was not done when it was

- 14 -

rejected by Mr. Salamone. And as a result, *we would respectfully request* the Court or the jury enter *a verdict in favor of the plaintiff* [*sic*] *for the full contractual balance* [*sic*] *that is due* [*sic*] as instructed by the Court. Thank you.

(*Id*. at 653-54.)

c. *The Trial Court's Instructions to the Jury*

In instructing the jury, the court addressed the issue of damages as follows.

If you find that the defendant breached the contract by failing to make delivery of the goods called for in the contract, you must compute the plaintiffs' damages as discussed below.

Now, although I am instructing you on the law of damages, it's entirely up to you to decide what to do on that account. If you believe that the plaintiff[s] ha[ve] carried . . . their burden of proof and should be awarded damages, then you will take into consideration the damages charge. . . .

I instruct you that the parties have agreed that the contract price was $723,559. That's $723,559. Plaintiffs assert that the cost of the paint was included in the $723,559. Defendant asserts that $38,000 [*sic*] is not reflected in the $723,559. If you find that the cost of the paint was not reflected in the invoice of June 12th . . . , add $38,500.

I instruct you that the parties agree that the amount plaintiffs paid to the defendant was $501,500. $501,500. That is the amount plaintiffs paid to the defendant. And the amount defendant paid to plaintiffs was $50,000.

If plaintiffs have proven by a preponderance of the evidence that defendant is liable for breach of contract, then you must determine the amount of damages which plaintiffs are entitled to for that claim. . . .

*A successful plaintiff in a breach of contract claim is entitled to recover damages that would place that plaintiff in the same position as if the contract had not been breached.* In other words, the plaintiff may recover those damages naturally arising from the breach of contract.

*In making this determination, you must determine the contract price, the amount that plaintiffs paid to the defendant, any expenses that plaintiff[s] may have saved as a result of the breach, and the amounts remitted to plaintiff[s].*

Additionally, if plaintiffs still owed money to defendant on the agreed-upon contract price, that amount should not be included in any damages award.

(Tr. 672-74) (emphases added).

With respect to the Jury Verdict Form's question "1-G," which addressed

damages, the court stated:

If you decide to award damages in this case, 1-G, *what amount of compensatory damage[s], if any, do you find* that plaintiffs have proven by a fair preponderance of the evidence *would fairly compensate plaintiffs for the damages resulting from defendant's breach*? You will fill that in with *an amount that you believe is just and reasonable based upon the evidence* . . . .

(Tr. 678) (emphases added).

### d. *The Verdict and the Original Judgment*

On April 22, 2021, responding to the questions set out in the Jury Verdict Form, the jury reported its findings that Plaintiffs established that they had "substantially performed their obligations under the contract" and that Douglas Marine "breached the contract by failing to tender the Skater within a reasonable time." (Tr. 687.) The jury found that Douglas Marine had failed to prove that Plaintiffs waived the right to insist on tender of the Skater prior to June 27, 2017, and failed to prove that Plaintiffs breached the contract by rejecting the Skater before Douglas Marine tendered it. (*See id*. at 687-88.) The jury found that Plaintiffs proved that they were damaged as a result of Douglas Marine's breach and found that the amount that "would fairly compensate Plaintiffs for the damages resulting from Defendant's breach of the contract [was] $131,171.00." (*Id*. at 688.) The jury stated that each finding was unanimous.

The court asked whether either side would like to have the jury polled. Counsel for each side responded "No" (*id*. at 689). The court thanked the jurors for their service and stated that their service as jurors in this case was completed. Final judgment was promptly entered, reciting that the jury's verdict was in favor of Plaintiffs against Douglas Marine for compensatory damages in the amount of $131,171. *See* Original Judgment, dated April 22, 2021.

C. *The Post-Original-Judgment Proceedings*

On May 19, 2021, Plaintiffs moved pursuant to Fed. R. Civ. P. 59(e) to alter or amend the judgment principally (1) "to rectify a clear and fundamental error of law and increas[e] the damage award from $131,171 to $451,500," and (2) "to include pre-judgment interest and post-judgment interest." (Plaintiffs' Rule 59(e) motion at 1.) Of these requests, only the increase in damages is at issue on this appeal; the district court denied the motion for pre-judgment interest; it granted post-judgment interest, which Douglas Marine had not opposed. The court granted Plaintiffs' motion to increase the damages award to $451,500. *See Salamone I*, 2021 WL 3723105, at *3-*8.

With respect to damages, Plaintiffs argued that under the Michigan Uniform Commercial Code, MCL § 440.2711(1), they were entitled to recover $451,500 because that represented the sum they paid Douglas Marine minus the amount remitted to them from Douglas Marine. Douglas Marine opposed, arguing (1) that Plaintiffs "waive[d their] objection to any inconsistency in a jury verdict" by "fail[ing] to object to the verdict prior to the excusing of the jury" (Douglas Marine Memorandum of Law in Opposition to Plaintiffs' Rule 59(e) Motion at 5 (internal quotation marks omitted)); and (2) that an increase in the damages award would violate the Seventh Amendment right to trial by jury in civil cases.

- 18 -

The district court rejected Douglas Marine's constitutional objection, and it found that Plaintiffs' procedural default could be excused. *See Salamone I*, 2021 WL 3723105, at *3-*8. The court began by noting that in the absence of "'an intervening change of controlling law[ or] the availability of new evidence,'" a Rule 59(e) motion may properly be granted only if the movant shows "'the need to correct a clear error or prevent manifest injustice.'" *Id*. at *3 (quoting *Hollander v. Board of Regents of the University of the State of New York*, 524 F. App'x 727, 729 (2d Cir. 2013)). With respect to Douglas Marine's waiver contention, the court noted that "'[i]t is well established that a party waives its objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury'"--the purpose of that requirement being "'to give the court and the opposing party the opportunity to correct an error in the conduct of the trial.'" *Salamone I*, 2021 WL 3723105, at *3 (quoting *Kosmynka v. Polaris Industries, Inc.*, 462 F.3d 74, 83 (2d Cir. 2006) ("*Kosmynka*") (other internal quotation marks omitted)). The court found it "clear from the record that Plaintiffs did not object to the verdict after judgment had been entered and before the jury was excused." *Salamone I*, 2021 WL 3723105, at *4.

The court rejected Plaintiffs' contention that an objection had been preserved by their request that the jury be instructed that the parties' agreement--that Plaintiffs had paid Douglas Marine $501,500 and that Douglas Marine had remitted

- 19 -

to Plaintiffs $50,000--required the conclusion that Plaintiffs' damages totaled $451,500. *See id*. at \*3. The court also pointed out that Plaintiffs did not and could not claim there was any error in the instructions given to the jury, noting that, at the charge conference,

> [w]hen Plaintiffs' Counsel initially declined the Court's invitation for objections and instead offered a "comment," *the Court specifically stated, "Do you have any objections? I'm asking if you have an objection. Tell me. Preserve the record.*" [Tr.] 615. Plaintiffs' Counsel then only objected to the instructions regarding the reasonable time standard under Michigan Law. *Id. Again, the Court asked, "Any other objections?" to which Plaintiffs' Counsel responded "No, your Honor." Id*. at 616. *Plaintiffs' Counsel also did not object to the damages section of the proposed jury verdict form. Id*. at 617. Plaintiffs' Counsel even affirmatively stated that the Court's reading of the stipulated amounts paid and remitted by both parties and including a copy of the charge with the proposed verdict form would be sufficient. *Id*. at 618-19.

*Salamone I*, 2021 WL 3723105, at \*4 n.5 (emphases ours).

However, the court noted that a party's failure to make a timely objection to the verdict could be "excuse[d]" if the verdict constituted "fundamental error." *Id*. at \*3 (internal quotation marks omitted).

> "Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a . . . trial, . . . and is 'so serious and flagrant that it goes to the very integrity of the trial.'" *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002) (quoting *Shade v. Housing Auth. of New Haven*, 251 F.3d 307, 31[3] (2d Cir. 2001)). "[A]ccurate and unobjectionable" jury instructions may present a fundamental error where they lack important rules of

damage calculations resulting in the "verdict form [acting as] an invitation to the jury to come up with an erroneous damage calculation." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1348 (2d Cir. 1993).

*Salamone I*, 2021 WL 3723105, at *3.

The district court attempted to fathom the jury's thinking that led to a conclusion that Plaintiffs' appropriate damage award totaled $131,171. It observed that in their summation to the jury, although Plaintiffs "recounted all the sums paid and remitted," they did not tell the jury "the specific amount of damage they were seeking"; they instead requested "'a verdict in favor of the plaintiff [*sic*] *for the full contractual balance that is due* as instructed by the Court'"; and they "*stopped short of telling the jury they were seeking $451,500.*" *Id*. at *5 (quoting Tr. 654 (emphases ours) ("*sic*" = thus in the summation)).

The court pointed out that Plaintiffs had instead argued "that Defendant was not entitled to the $876,500 it received for the Skater, but '$102,000 and change less . . . including the $50,000[] that they [*sic*] repaid to Mr. Salamone.'" *Salamone I*, 2021 WL 3723105, at *5 (quoting Tr. 645 ("*sic*" = thus in the summation)). "Essentially," the court observed, "Plaintiffs stated that Defendant was not entitled to the $152,941 it received in excess of the contract price *but [Plaintiffs] failed to state at closing that*

- 21 -

*[Defendant was] not entitled to any of the money Plaintiffs paid* because of Defendant's breach." *Salamone I*, 2021 WL 3723105, at *5 (emphasis added).

In reconstructing the jury's route to $131,171, the court observed that if the jury was

> subtracting the additional $25,000 that Plaintiffs also claimed they were entitled [to] for the engines, the total comes to $127,941, only $3,230 from the amount the jury actually awarded. [Tr.] at 653.

*Salamone I*, 2021 WL 3723105, at *5. Although stating that the obscure $3,230 could have resulted from a mathematical error or possible confusion, the court went on to note that Plaintiffs' summation had included the following:

> "[T]he evidence also shows that plaintiff [*sic*] owned the engines, drives and transoms and their proceeds. There is no dispute that plaintiffs paid $140,000 for the engines and drives. There is no dispute they were sold. *There's no dispute that only $50,000 of the proceeds were ultimately paid to Mr. Salamone.* In addition to the $50,000, *Mr. Salamone* [*sic*] *received* an additional $25,000 for the engines. The evidence clearly shows that the drives and transoms were sold as part of the defendant's subsequent sale and garnered $78,230. *None* [*sic*] of *that money* was paid back to the plaintiff [*sic*]."

*Id*. (quoting Tr. 653 ("*sic*" = thus in the summation) (emphases ours)). The court recognized that

> *[t]he difference between the $75,000* Plaintiffs asserted that they were entitled to for the engine *and the $78,230* which Plaintiffs claimed that they were owed for the drives and transoms *is $3,230.* By adding $3,230 to $127,941, the Court arrives at the damages

award ultimately entered by the jury, $131,171.  Given the large discussion of the engines, drives, and transoms together at trial, *it is likely that the jury thought the $75,000 Plaintiffs asked for in damages for the engines also included the sale of the drives and transoms, leaving only $3,230 to be added to the total of damages to make up the difference.*  While complicated, this is the only logical way of interpreting the jury verdict based on the evidence.

*Salamone I*, 2021 WL 3723105, at *6 (emphases added).

The court found it "clear . . . *that the jury attempted to award Plaintiffs what they said that they were due*"; that the court had repeatedly warned the parties "that the jury would be confused and have a difficult time calculating the damages"; that "*Plaintiffs, nevertheless, did not clearly tell the jury what they were asking for in damages*"; and that the jury's "*damages calculation was an error that was largely due to Plaintiffs' strategical errors*."  *Id*. (emphases added).

Nonetheless, the court stated that--because according to "clear-cut commands of Michigan contract law," "Plaintiffs were entitled to the balance paid under the contract"--"[t]he jury award . . . presents a fundamental error."  *Id*. (internal quotation marks omitted).  The court concluded that "as Plaintiffs paid Defendant $501,500 and Defendants remitted $50,000," they were entitled to have the verdict increased "to $451,500 . . . to correct the fundamental error."  *Id*. at *8.

The court rejected Douglas Marine's contention that such an increase would violate its Seventh Amendment right to have fact issues decided by the jury.

- 23 -

It noted that, although that Amendment precludes a process such as "additur," in which the court would condition the denial of a new trial on the defendant's agreement to an increase in the jury's award, *see Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935), Plaintiffs here had made no request for a new trial. As discussed in Part II.C. below, the court concluded that a "'simpl[e] adjust[ment]'" to the jury's verdict was permissible, *Salamone I*, 2021 WL 3723105, at *7 (quoting *Liriano v. Hobart Corp.*, 170 F.3d 264, 273 (2d Cir. 1999)), because "[t]he Parties stipulated that Plaintiffs paid Defendant $501,500 and Defendant remitted $50,000 to Plaintiffs. Thus, there is no question that Plaintiffs were entitled to $451,500 in damages," *Salamone I*, 2021 WL 3723105, at *7.

The Amended Judgment was entered, awarding Plaintiffs damages in the amount of $451,500.

D. *Douglas Marine's Post-Amended-Judgment Motion*

Douglas Marine timely filed the present appeal from the Amended Judgment. Thereafter, on September 24, 2021, Douglas Marine moved in the district court to set aside the Amended Judgment (1) pursuant to Fed. R. Civ. P. 60(b)(4) on the ground that it was void for lack of personal jurisdiction over Douglas Marine, and (2) pursuant to Rule 60(b)(3) on the ground that it had been procured by fraud,

- 24 -

misrepresentation, or other misconduct by Plaintiffs in connection with the issue of the court's jurisdiction over Douglas Marine (collectively "Rule 60(b) motion"). Following the district court's denial of the Rule 60(b) motion in *Salamone II*, 2022 WL 111774 (*see* Part III below), Douglas Marine filed an amended notice of appeal to include challenges to *Salamone II*.

## II. THE GRANTING OF PLAINTIFFS' RULE 59(e) MOTION

Rule 59(e) allows a party, not later than 28 days after entry of a judgment, to make "[a] motion to alter or amend [the] judgment." Fed. R. Civ. P. 59(e). Rules 59(a) and (b) allow a party, within 28 days after entry of judgment, to move for a new trial on some or all issues. While Rule 59(a) allows the court, following a jury trial, to grant a new trial motion "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), the court is authorized to grant a Rule 59(e) motion to alter or amend the judgment "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or *the need to correct a clear error or prevent manifest injustice*," *Metzler Investment GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) ("*Metzler*") (internal quotation marks omitted) (emphasis ours); *see generally* 11 Wright

& Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2024); 12 *Moore's Federal Practice* § 59.30[5][a][i] (3d ed. 2024).

We review the district court's ruling on a Rule 59(e) motion for "abuse of discretion." *Schwartz v. Liberty Mutual Insurance Co.*, 539 F.3d 135, 150 (2d Cir. 2008). A court abuses its discretion in ruling on such a motion if its decision either rests on an error of law or a clearly erroneous finding of fact, or cannot be located within the range of permissible decisions. *See, e.g.*, *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013), *cert. denied*, 571 U.S. 1200 (2014).

On this appeal, Douglas Marine contends principally that the district court erred (1) in ruling that Plaintiffs' procedural failure to object to the verdict before the jury was discharged should be excused on the ground that the verdict constituted fundamental error, and (2) in ruling that the court's increasing the damages awarded by the jury did not violate the Seventh Amendment's guarantee of the right, in civil cases, to trial by jury. We conclude that the Amended Judgment must be reversed.

A. *The Fundamental-Error Standard*

Plaintiffs in their Rule 59(e) motion asked the court to increase the verdict's award of damages in order to "rectify" what they characterized as "a clear

and fundamental error of law." (Plaintiffs' Rule 59(e) motion at 1.) The district court, citing *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 60-62 (2d Cir. 2002), concluded that Plaintiffs had waived their objection to the verdict except insofar as they alleged fundamental error since they failed to object to the damages award before the jury was dismissed. Plaintiffs have not cross-appealed the district court's decision to hold them to the fundamental error standard. We therefore assume without deciding that the district court was correct to apply that standard. *Cf. Browe v. CTC Corp.*, 15 F.4th 175, 194 (2d Cir. 2021) (employing similar assumption regarding district court's allocation of burden of proof).

The fundamental-error standard, applied in civil cases, is akin to the plain error standard applicable to criminal cases, *see* Fed. R. Crim. P. 52(b), but is even "more stringent." *Fabri v. United Technologies International, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004) ("*Fabri*"). "In order to warrant relief, such a 'fundamental' error must be even more egregious than the type of 'plain' errors that might suffice to excuse a procedural default in a criminal trial." *Shade v. Housing Authority of the City of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001) ("*Shade*").

The fundamental-error standard is one that is applied when a party seeks relief from a final judgment after having bypassed the normal opportunity to present his objection--as when the party seeks such relief on the basis of inconsistent findings

- 27 -

in a jury verdict despite having failed to object to the inconsistency before the jury was discharged, *see*, *e.g.*, *Kosmynka*, 462 F.3d at 83, or on the basis of an erroneous instruction to which he has failed to object before the jury retired to deliberate, *see*, *e.g.*, *Fabri*, 387 F.3d at 121; *Jarvis*, 283 F.3d at 56-57, 62; *Shade*, 251 F.3d at 312-13. Given the strong federal interests in the finality of civil judgments and the efficient use of scarce judicial resources, *see*, *e.g.*, *Metzler*, 970 F.3d at 142; *Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 57 (2d Cir. 1992) ("*Lavoie*"), an error in a civil case is considered "fundamental" only if it "deprived the jury of adequate legal guidance to reach *a rational decision*" or was "so serious and flagrant that it [went] to the very *integrity of the trial*." *Jarvis*, 283 F.3d at 62 (internal quotation marks omitted) (emphases ours); *see*, *e.g.*, *Fabri*, 387 F.3d at 121; *Shade*, 251 F.3d at 313.

B. *The Record as to the Provenance of Error*

In the present case, in support of their Rule 59(e) motion claiming a "clear and fundamental error of law" (Plaintiffs' Rule 59(e) motion at 1), Plaintiffs did not point to an error of law. While they argue that the jury's verdict was erroneous, juries decide questions of fact, not law. *See generally Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 547, 854 N.W.2d 152, 171 (2014) ("the adequacy of the amount of the damages is generally a matter for the jury to decide"). Thus, the Michigan Supreme

- 28 -

Court Committee provides "Model Civil Jury Instructions" that set out fact questions for the jury to answer in order to find the amount of damages to which the claimant is entitled.

Nor did Plaintiffs point to any error by the district court--much less an error that affected the integrity of the trial or led to a jury verdict that was not rational. While Plaintiffs cited Michigan's MCL § 440.7211 for their assertion that it was "clear" (Plaintiffs' Rule 59(e) motion at 1) that they were entitled to $451,500 in damages-- because they had paid Douglas Marine $501,500 and Douglas Marine had remitted to them only $50,000--that arithmetic argument does not accurately reflect § 440.7211. That section, while cross-referencing to potential additional damages or remedies dealt with in other sections, states that "the buyer may . . . recover[] so much of the price as has been paid." Section 440.7211 makes no mention of any subtraction for money that the seller may have remitted to the buyer. Thus, § 440.7211 does not fully describe the basic damages to which Plaintiffs claim entitlement in the present case. The district court, however, accurately instructed the jury as a matter of law that Plaintiffs were "entitled to recover damages that would place [them] in the same position as if the contract had not been breached."

Further, under Michigan law, a seller's failure to deliver agreed-upon goods may in fact allow the buyer to avoid some expenses that it would otherwise

have borne. Thus, the Model Civil Jury Instructions include questions as to "expenses the buyer saved," which are to be subtracted in calculating the buyer's damages, Model Instruction No. 241.02. Accordingly, the district court instructed the jury that "[i]n making [the] determination" as to the amount of "damages that would place" Plaintiffs "in the same position as if the contract had not been breached," the jury not only must determine the amount Plaintiffs paid to Douglas Marine and the amount Douglas Marine remitted to Plaintiffs, but also "must determine any expenses that plaintiff[s] may have saved as a result of the breach." (Tr. 674.) Thus, Plaintiffs' entitlement to $451,500 in damages was not clear as a matter of law; and the jury's factual finding as to the damages it calculated would appropriately compensate Plaintiffs for nondelivery of the boat could not constitute "a clear and fundamental error of law" (Plaintiffs' Rule 59(e) motion at 1).

While Plaintiffs insist that the damages to which they were entitled was clearly and simply $451,500--*i.e.*, the $501,500 they paid Douglas Marine, minus the $50,000 that Douglas Marine remitted to them--Plaintiffs' summation to the jury made the amount of damages they sought complicated, and anything but clear. In discussing damages in their summation, Plaintiffs began by stating that Douglas Marine had "received $876,500" for the Skater, and emphasizing that that sum was more than "$102,000 and change" in excess of the contract price to which Douglas

Marine was entitled. (Tr. 645.) Plaintiffs' counsel threw at the jury 14 different dollar figures, not one of which was $451,500.

Nor have Plaintiffs shown that the jury's arrival at a damages award of $131,171 was a decision that was not rational. The district court did well to unravel the plethora of numbers the jury was given, and to determine how it arrived at such a specific determination that the damages to which Plaintiffs were entitled totaled $131,171 (*see* Part I.C above). Plaintiffs' summation at the outset had urged the jury to think about the fact that Douglas Marine had received a total of "$876,500" for a boat whose contract price was $723,559. The court noted that the difference between those two numbers was $152,941; and it inferred that the jury had likely begun with $152,941 and arrived at its verdict of $131,171 by, first, "subtracting the additional $25,000 that Plaintiffs also claimed they were entitled [to] for the engines," *Salamone I*, 2021 WL 3723105, at *5--leaving $127,941--and then adding $3,230 which was the difference between the "$78,230" that Plaintiffs told the jury Douglas Marine had received for the engines and other items (Tr. 653), and the $75,000 total that Plaintiffs said Douglas Marine had received for the engines.

These inferred calculations are mathematically sound to explain how the jury arrived at $131,171. And although at first glance the court's hypothesis that the jury *subtracted* from $152,941 a sum of "$25,000 that Plaintiffs also claimed they were

- 31 -

entitled [to]" seems illogical, a clear explanation for that subtraction appears in Plaintiffs' summation. After having stated that "only $50,000 of the proceeds [from Douglas Marine's $75,000 sale of the engines] were ultimately paid to Mr. Salamone," Plaintiffs' counsel's very next sentence stated that "In addition . . . to the $50,000, *Mr. Salamone* [*sic*] *received* [*sic*] an additional $25,000 [*sic*] for the engines." (Tr. 653 (emphasis added).) While apparently a slip of the tongue, Plaintiffs' own literal statement that Salamone "received an additional $25,000" explains why the jury would subtract $25,000 from the $152,941 that, as Plaintiffs emphasized, Douglas Marine had received in excess of the price of the boat.

Plaintiffs could have made their current desire for damages in the amount of $451,500 as clear to the jury as they stated it in their Rule 59(e) motion and on appeal. In the charge conference, when the parties were proffering numerous possible damages formulas, the court had warned that the jury would likely be confused and had agreed to instruct the jury that the parties were in agreement that Plaintiffs had paid Douglas Marine $501,500, and that the amount Douglas Marine had repaid was $50,000. Yet, Plaintiffs' counsel in summation, while including reference to these two numbers, never mentioned them in conjunction or even suggested that they were the two components of the relevant equation. Counsel instead chose to bury the two most relevant numbers in an avalanche of 14 different

- 32 -

dollar figures (*see* Part I.B.2.b. above), and chose never to mention the dollar amount that they now claim as their "clear" damages, $451,500.

The court found, aptly, that the jury's damages calculation "was largely due to Plaintiffs' strategical errors." *Salamone I*, 2021 WL 3723105, at *6. But "[u]nlike . . . contradictory and confusing verdict sheet errors," *Armstrong ex rel. Armstrong v. Brookdale University Hospital & Medical Center*, 425 F.3d 126, 138 (2d Cir. 2005)--a party's own "strategic trial decisions," *id*., and "tactical trial" choices, *Lavoie*, 975 F.2d at 54, 55-56, do not provide a basis for concluding that that party has been a victim of fundamental error or a miscarriage of justice.

In sum, we see no fundamental error or manifest injustice here. The record does not permit a conclusion that the jury reached a verdict that was irrational or that there was any impingement on the integrity of the trial process. And it surely does not permit a conclusion that Plaintiffs--whose summation was confusing and contained misstatements that may have led directly to the jury's bottom-line calculation of damages--were victims of any manifest injustice. Even if there were no constitutional impediment to the court's increasing Plaintiffs' recovery--a question we need not reach--we would conclude that the district court erred as a matter of law in ruling that there was a fundamental error or a manifest injustice that required or permitted the court to increase the amount of damages awarded by the jury.

## III. DOUGLAS MARINE'S OTHER CONTENTIONS

Douglas Marine also contends that the district court erred in refusing to give the jury an instruction at trial with regard to mitigation of damages, and in denying its post-Amended-Judgment motion for dismissal of this action on the ground that the court lacked personal jurisdiction over Douglas Marine. Neither contention warrants extended discussion.

As to the first contention, the principle that a claimant has an obligation to mitigate his damages focuses on losses suffered by the claimant. *See*, *e.g.*, *King v. Taylor Chrysler-Plymouth, Inc.*, 184 Mich. App. 204, 213-14, 457 N.W.2d 42, 46 (Mich. Ct. App. 1990) ("The injured party in a contract action must make every reasonable effort to minimize *his or her* damages." (emphasis added)). Douglas Marine provides no support for its contention that a seller of goods, after breaching the contract, is entitled to have the disappointed buyer help to mitigate the seller's self-inflicted losses. And to the extent that Douglas Marine was seeking to reduce any damages award on account of Plaintiffs' unclean hands from their interference with Douglas Marine's efforts to recover value from its expenditures on the boat, Douglas Marine

has not shown that the district court erred in ruling that the evidence in that regard was too speculative.

As to Douglas Marine's challenge to the district court's denial of its post-Amended-Judgment motion pursuant to Rule 60(b), asserting that the Amended Judgment was void for lack of personal jurisdiction over Douglas Marine, *see* Fed. R. Civ. P. 60(b)(4), and that Plaintiffs had perpetrated a fraud on the court in asserting that there was such jurisdiction, *see id*. Rule 60(b)(3), the district court rejected those contentions in *Salamone II*, 2022 WL 111774, at \*5-\*6, familiarity with which is assumed. The court denied those motions principally because Douglas Marine had litigated the action through a jury verdict and a post-judgment motion without ever moving to dismiss for lack of personal jurisdiction. We affirm the denial of Douglas Marine's personal-jurisdiction-related motion substantially for the reasons stated by the district court in *Salamone II*. We also think it noteworthy that in Douglas Marine's main brief on this appeal, despite devoting more of the argument section to issues relating to personal jurisdiction than to any other issue, the brief's sole conclusion is that "[t]he district court's [Rule 59(e)] order should be reversed and a new trial ordered," or "[a]t minimum, the original Judgment should be restored" (Douglas Marine brief on appeal at 50). Consistent with Douglas Marine's approach

throughout the proceedings in the district court, neither of those requests suggests a lack of personal jurisdiction.

CONCLUSION

We have considered all of the parties' arguments in support of their respective positions on this appeal and, except as indicated above, have found them to be without merit. For the foregoing reasons, so much of the Amended Judgment as awarded Plaintiffs $451,500 in damages is reversed, and the matter is remanded to the district court for entry of a second amended judgment that (a) reinstates the original jury award of $131,171 in damages, and (b) grants Plaintiffs costs and postjudgment interest. We affirm the district court's denial of Douglas Marine's Rule 60(b) motions.

Neither side shall have costs for this appeal.